McCLELLAN ECOLOGICAL SEEPAGE SITUATION; Mary Fisher; Charles Yarbrough, Plaintiffs-Appellants,

v.

Frank C. CARLUCCI, Secretary of the U.S. Department of Defense, Defendant-Appellee.[*]

No. 86–15050.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1987.

Decided Dec. 31, 1987.

---

[*] Frank C. Carlucci is substituted for his predecessor, Caspar Weinberger, as Secretary of Defense. Fed.R.App.P. 43(c)(1).

Michael Axline, Eugene, Or., for plaintiffs-appellants.

John P. Schnitker, Dept. of Justice, Civil Div., Washington, D.C., for defendant-appellee.

Before TANG and BEEZER, Circuit Judges, and LYNCH,** District Judge.

BEEZER, Circuit Judge:

Requesters McClellan Ecological Seepage Situation (MESS), a nonprofit association, and Charles Yarbrough and Mary Fisher, individual members of the association, requested that McClellan Air Force Base officials waive all search and copying fees on a Freedom of Information Act (FOIA) request. The fees were reduced by twenty-five percent. Requesters sued the Secretary of Defense (Secretary) to obtain a full fee waiver. The district court granted summary judgment in favor of the Secretary. We affirm.

I

Requesters submitted a FOIA request to McClellan Air Force Base officials. The FOIA request asked for information about water pollution at McClellan Air Force Base (AFB); that information consisted of twenty-five categories of records. The FOIA request also asked for a waiver of

search and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) (1982, amended 1986).

The AFB's FOIA officer replied to the requests. He noted that the individual requesters were among individuals who had filed claims against the Air Force for damage and injury from toxic waste disposal. He then posed twenty-three questions to requesters, the answers to which he deemed pertinent to a decision to waive or reduce the fees. Full fees would amount to $52,268.00.

The lawyer for requesters, Michael Axline (Axline), described the FOIA officer's questions as irrelevant. Nevertheless, Axline responded to a question about the relationship between his office, the Western Natural Resources Law Clinic, and Duane Miller (Miller), the lawyer representing members of MESS who had filed tort claims against the Air Force. Axline stated that his Clinic was not involved with prosecuting the tort claims. He then acknowledged consulting with Miller prior to making the FOIA request:

> Mr. Miller asked the Clinic to ascertain, on behalf of MESS and others affected or potentially affected by pollution from McClellan, whether any public law actions existed which would ensure agency compliance with federal law.

Finally, repeating that the FOIA officer should waive search and copying fees, Axline said he was willing to assist in narrowing the FOIA request.

The FOIA officer again wrote to requesters seeking an answer to his questions before he proceeded to a fee decision. The FOIA officer pointed out that five or six days before requesters filed their FOIA request, representatives from the base had asked Miller to document and clarify allegations in the tort claims of the individual requesters and others.

Axline next spoke with other representatives of the AFB, but Axline was not able to resolve differences with respect to the fee waiver. The FOIA officer then made his final decision to reduce requesters'

** Honorable Eugene F. Lynch, United States District Judge, Northern District of California, sitting by designation.

search and copying fees by twenty-five percent, subject to appeal within the Air Force.

The district court action sought a declaration that the FOIA officer's denial of the fee waiver was arbitrary and capricious. The district court granted summary judgment in favor of the Secretary.

A week later Congress amended 5 U.S.C. § 552(a)(4)(A), the statute governing waiver of fees on FOIA requests. The amendment took effect April 25, 1987. *See* Freedom of Information Reform Act of 1986, Pub.L. No. 99–570, § 1804(b)(1), 100 Stat. 3207–50 (1986). The amendment "shall apply with respect to any requests for records, whether or not the request was made prior to such date, and shall apply to any civil action pending on such date." *Id.* at § 1804(b)(2).

The amendment alters the test for waiving or reducing fees on FOIA requests. Under the old test, an agency was required to waive or reduce fees when to do so was "in the public interest because furnishing the information can be considered as primarily benefiting the general public." 5 U.S.C. § 552(a)(4)(A) (1982, amended 1986). Under the new test,

> Documents shall be furnished without any charge or at a charge reduced ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A)(iii) (1982 and Supp. IV 1986).

In addition, the amendment alters the standard of judicial review for waiver of fees. A court no longer applies the "arbitrary and capricious" standard to an agency's action. Instead, "[i]n any action by a requester regarding the waiver of fees under this section, the court shall determine

the matter de novo: *Provided,* That the court's review of the matter shall be limited to the record before the agency." *Id.* at § 552(a)(4)(A)(vii).

## II

Accordingly, we review de novo the FOIA officer's decision to reduce fees by 25 percent, limiting our review to the record before the FOIA officer.[1] We have jurisdiction under 28 U.S.C. § 1291.

The amended statute "is to be liberally construed in favor of waivers for noncommercial requesters." 132 Cong.Rec. S14298 (Sept. 30, 1986) (Sen. Leahy). The amendment's main purpose was "to remove the roadblocks and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA." 132 Cong.Rec. S16496 (Oct. 15, 1986) (Sen. Leahy). In interpreting section 552(a)(4)(A)(iii), we will heed the legislative intent.

Section 552(a)(4)(A)(iii) sets out a two-part test for establishing if disclosure requires an agency to waive or reduce fees: disclosure must be "likely to contribute significantly to public understanding of the operations or activities of the government," and disclosure must be "not primarily in the commercial interest of the requester." *Id.* Hoping to skirt this two-part test, requesters argue that disclosure to a public interest group presumptively requires an agency to waive fees. Legislative history, however, makes plain that public interest groups must satisfy the statutory test: "Although public interest groups do not fall within the most favorable fee category, all public interest groups—regardless of their status or identity or function—will be able to qualify for fee waivers and thereby obtain documents without charge if their requests meet the standard for waivers." 132 Cong.Rec. H9463 (Oct. 8, 1986) (Rep. English).

---

1. Two courts have mentioned the statute but, without explanation, have not applied it. In *Savage v. CIA,* 826 F.2d 561 (7th Cir.1987), the court applied the old statute, remanding the case because the record was insufficient. In doing so the court instructed the district court

to determine the effect, if any, of the 1986 amendment. In *Larson v. CIA,* 664 F.Supp. 15 (D.D.C.1987), the court likewise applied the old statute, suggesting that the new statute and the old statute include similar fee waiver tests.

One part of the fee waiver test demands that disclosure of the information be "not primarily in the commercial interest of the requester." [2] 5 U.S.C. § 552(a)(4)(A)(iii). Both Charles Yarbrough and Mary Fisher have filed claims for damages. Other members of MESS have filed claims as well. For the purpose of establishing whether disclosure is in the commercial interest of MESS, this court will attribute the members' claims for damages to MESS itself. *See Critical Mass Energy Project v. Nuclear Reg. Com'n,* 830 F.2d 278 (D.C. Cir.1987).

Claims for damages do not constitute a commercial interest—at least not when the claims are grounded in tort. The D.C. Circuit has held that the term "commercial" is to be given its ordinary meaning when read in conjunction with FOIA. *Public Citizen Health Research Group v. Food and Drug Administration,* 704 F.2d 1280, 1290 (D.C.Cir.1983) (discussing exemption to FOIA). Information is commercial if it relates to commerce, trade, or profit. *See* Department of Defense Freedom of Information Act Program, 52 Fed. Reg. 13641, 13655 (1987) (to be codified at 32 C.F.R. 286.33) (defining categories of requesters for fee assessment). Information helpful to a tort claim furthers a requester's interest in compensation or retribution, but not an interest in commerce, trade, or profit. Therefore requesters have no commercial interest in disclosure of the information; they satisfy this part of the fee waiver test.

The other part of the fee waiver test demands that disclosure of the information be "likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). To satisfy this part of the test, the best evidence requesters can point to is their first letter seeking a waiver of fees. In that letter requesters stated that they seek to benefit the general public, especially in Sacramento; that information

may be used in litigation to ensure that agencies comply with federal law; and that the information ultimately will be donated to a public institution.

These statements do not support a summary conclusion that the agency must waive all fees. Requesters acknowledge that "[a] requester seeking a fee waiver bears the initial burden of identifying the public interest to be served." *National Treasury Employees Union v. Griffin,* 811 F.2d 644, 647 (D.C.Cir.1987). In a case under the former fee waiver statute, the requester had made conclusory statements, such as that the information " 'will improve Government efficiency and culpability.' " *Id.* at 646, quoting from record. The court stated that an agency may infer a lack of substantial public interest "[w]hen a public interest is asserted but not identified with reasonable specificity, and circumstances do not clarify the point of the requests." *Griffin,* 811 F.2d at 647.

That case offers an analogy: here requesters do not explain with reasonable specificity how disclosure will contribute to public understanding. If conclusory statements supported a fee waiver for this request, then similar statements could support fee waivers for even broader requests. In the extreme case a wide-ranging public interest group could demand fee waiver on a request for *all* U.S. government documents, on the basis that the information might be used in litigation to ensure that agencies comply with federal law.

In this case, of course, circumstances somewhat clarify the point of the request. These circumstances include the content of the request, dealing with water pollution, and the name of one requester, MESS. Yet other circumstances confuse the point of the request—in particular the circumstances surrounding the relation between requesters' FOIA request and the private claims.

To resolve doubts about requesters' public interest aspect, the FOIA officer posed

---

2. The inquiry required by this part of the test overlaps with the inquiry required by a new provision establishing fee categories. The latter inquiry aims to place the requester into one of

three categories, including a category seeking records "for a commercial use." 5 U.S.C. § 552(a)(4)(A)(ii)(I).

questions of his own. Declining to answer these questions, requesters left the FOIA officer to evaluate fee waiver on a record consisting of conclusory statements of public interest, the content of the request, MESS's name, and circumstances suggesting at least a partial motive of obtaining information to advance private lawsuits. Now, on the same record, we evaluate whether requesters satisfy the part of the fee waiver test requiring that disclosure of information be likely to contribute significantly to public understanding of the government. 5 U.S.C. § 552(a)(4)(A)(iii).

Department of Defense regulations identify elements that a court should consider: (1) operations or activities of government as the subject of the FOIA request; (2) informative value, or potential for contribution to public understanding; (3) public understanding as the result of disclosure; and (4) significance of the disclosure's contribution. Department of Defense Freedom of Information Act Program, 52 Fed. Reg. 13641, 13654 (1987) (to be codified at 32 C.F.R. 286.33).

Requesters' FOIA request obviously has the operations or activities of government as its subject; the request asks for records about activities causing water pollution at AFB and about operations to prevent and cure that pollution. In addition, the FOIA request seeks information with high potential for contribution to public understanding. Legislative history suggests that information has more of this potential to the degree that the information is new and supports public oversight of agency operations, including the effect of agency policy on public health. 132 Cong.Rec. H9464 (Oct. 8, 1986) (statement by Reps. Kindness and English). Although the information requesters seek is not all new, the information could support public oversight of AFB's operations, including the effect AFB's water pollution policy has on public health.

Requesters state that the public they intend to benefit consists of Sacramento residents. Based on the record, however, disclosure of this information likely would result in only limited public understanding in Sacramento. Requesters' request asks for a large volume of information, some of it technical, much of it identified only by broad categories. The request's size and lack of specificity do not improve requesters' case for waiver. *See* Department of Defense Freedom of Information Act Program, 52 Fed.Reg. 13641, 13654 (1987) (to be codified at 32 C.F.R. 286.33). Worse, the request gives no indication of requesters' ability to understand and process this information. Though MESS's name is suggestive, the record before the agency does not reveal whether requesters have a history of disseminating such information, either through public lawsuits or other means.[3] Requesters' credibility is not enhanced by circumstances suggesting that requesters' public interest aspect may be nothing more than a pretext; disavowal by the Clinic's lawyer does not completely allay the suspicion that requesters serve as a stalking horse for private claimants.

Based on the record, furthermore, the disclosure would not appear to make a *significant* contribution to public understanding. Even if requesters have the ability to convey information to the public, they give no details about their intention to do so. For instance, requesters do not suggest on what basis they might sue to ensure the base's compliance with particular federal laws or regulations. Likewise requesters do not name a public institution to which they might donate information from the FOIA request. Without more specific information, which was not on the record before the agency, we have no reason to conclude that disclosure of the information will have much significance.

### III

■ Requesters argue that an agency may not demand extensive information from a requester as a prerequisite to waiving fees. In fact an agency should be able to request some additional information.

---

3. The record before the agency did not include affidavits that requesters later submitted to the district court. Those affidavits set out MESS's history and recent activities.

The fee waiver statute nowhere suggests that an agency may not ask for more information if the requester fails to provide enough. Legislative history and agency regulations imply that an agency may seek additional information when establishing a requester's category for fee assessment. *See* 132 Cong.Rec. H9463 (Oct. 8, 1986) (statement by Reps. Kindness and English, noting that an agency "may not conduct an extensive proceeding"); Department of Defense Freedom of Information Act Program, 52 Fed.Reg. 13641, 13654 (1987) (to be codified at 32 C.F.R. 286.33) (agency may notify the requester that he must provide additional justification). In evaluating a requester's justification for waiver, which requires a similar inquiry, the agency likewise should be able to seek additional information; the agency may require more detail from some requesters than from others. *See Griffin*, 811 F.2d at 649.

In this case the FOIA officer did not seek a burdensome amount of information from requesters. Furthermore, the FOIA officer's questions were not a prerequisite to waiving or reducing fees: requesters refused to answer questions, but the FOIA officer reduced fees by twenty-five percent.

In refusing to answer, requesters' lawyer also declared the questions to be irrelevant. Most of the questions dealt with MESS's identity and history, MESS's ability to absorb and disseminate information, and MESS's specific plans to use the information in the public interest. Other questions asked about the relationship between requesters' FOIA request and the private claims.

All these questions, including questions in the latter group, were relevant to an assessment of whether disclosure is "likely to contribute significantly to public understanding." 5 U.S.C. § 552(a)(4)(A)(iii). Case law is clear that "[t]he FOIA is not to be used as a substitute for the traditional means of discovery available to a litigant." *In re Steele*, 799 F.2d 461, 466 (9th Cir.1986). In interpreting the fee waiver statute, we will not undermine this FOIA policy. Accordingly, insofar as a requester seeks information merely to advance private lawsuits—or administrative claims—we will consider disclosure less "likely to contribute ... to public understanding." [4] 5 U.S.C. § 552(a)(4)(A)(iii).

Both Charles Yarbrough and Mary Fisher had filed private tort claims, as had many members of MESS. Although denying that his office was involved with prosecuting the tort claims, requesters' lawyer did acknowledge that the tort claimants' lawyer had prompted the FOIA request. Only six days earlier the FOIA officer had asked the tort claimants' lawyer to clarify and document the private claims.

In view of this timing, questions about the FOIA request's relation to private claims were relevant. The FOIA officer properly sought to determine whether appellants' statements of public interest were purely pretextual, masking an intent to advance private claims. By this inquiry the FOIA officer might learn more about whether disclosure would be likely to contribute to public understanding. Thus the inquiry was entirely appropriate.

## IV

Requesters make only a modest showing that disclosure of information about AFB "is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). Even in light of legislative intent that courts construe the amended statute liberally, requesters do not deserve a complete waiver of fees. A twenty-five percent reduction is appropriate.

AFFIRMED.

---

**4.** A requester's motive for seeking disclosure is a factor for an agency to consider in evaluating the likely effect of disclosure on public understanding. The mere possibility of private lawsuits does not justify an agency in refusing to waive fees: public interest may be at peak precisely when there is potential for private lawsuits against the government.