**Bruce PEDERSON and Jacqueline P. Taylor, Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION, Defendant.**

No. 93–C–241.

United States District Court, D. Colorado.

March 28, 1994.

Jacqueline P. Taylor, Evergreen, CO, Bruce Pederson, Denver, CO, for plaintiffs.

Stephen D. Taylor, Asst. U.S. Atty., Henry Azar, Dept. of Justice, Civ. Div., Washington, DC, for defendant.

MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiffs Bruce J. Pederson and Jacqueline P. Taylor commenced this action against the defendant, the Resolution Trust Corporation (RTC), seeking an order: (1) compelling the RTC to waive all search and copying fees in connection with the plaintiffs' Freedom of Information Act (FOIA) request pursuant to 5 U.S.C. § 552(a)(4)(A); (2) granting the plaintiffs their costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and (3) referring any written findings of potential arbitrary and capricious conduct by the RTC regarding this FOIA request to the Office of the Special Counsel of the Merit Systems Protection Board for purposes of appropriate disciplinary action.

Plaintiffs have moved for summary judgment pursuant to Fed.R.Civ.P. 56. The RTC has responded by opposing that motion and by filing a cross-motion for summary judgment. Plaintiffs oppose the RTC's cross-motion.

The issues have been fully briefed and oral argument would not materially facilitate the decision process. Jurisdiction is asserted pursuant to 5 U.S.C. § 552(a)(4)(B).

## I. *BACKGROUND.*

The facts are not in dispute. Plaintiffs served as program managers for the RTC Professional Liability Section (PLS), which the RTC reorganized early in 1992. In the spring of 1992, the plaintiffs began to investigate and document waste and abuse in connection with the PLS reorganization. On May 11, 1992, the plaintiffs were removed from their positions as PLS managers.

In May and June of 1992, the plaintiffs began working with the RTC Office of Inspector General (OIG) and the United States Government Accounting Office (GAO). Both offices had oversight jurisdiction to investigate waste and abuse in RTC operations. As the GAO increasingly became concerned about the wasteful effects of the PLS reorganization, the plaintiffs began working with the United States Senate Committee on Banking, Housing and Urban Affairs (Senate Banking Committee).

On August 11, 1992, the plaintiffs "blew the whistle" by testifying in open session before the Senate Banking Committee, criticizing the PLS reorganization as a waste of taxpayer funds. Their testimony was published in a hearing record and received widespread national coverage in the print and broadcast media.

On October 1, 1992, the plaintiffs were invited to attend a second hearing before the Senate Banking Committee. There, the plaintiffs heard RTC President and CEO Albert V. Casey defend the PLS reorganization. Plaintiffs were invited to provide a rebuttal and in November 1992, they submitted a fifty-three page statement to the Senate Banking Committee for inclusion in the hearing record.

Plaintiffs' ongoing research and testimony before the Senate Banking Committee convinced them that the RTC possessed numerous documents bearing on the PLS reorganization. Thus, on August 25, 1992, they filed FOIA request no. 92–1045, seeking information regarding the motives and mechanics of the PLS reorganization.[1]

In connection with their FOIA request, the plaintiffs asked the RTC to waive search and copying fees. The RTC refused. Plaintiffs appealed the decision, thereby exhausting their administrative remedies, and again were denied a fee waiver. Thus, on January 28, 1993, the plaintiffs commenced this action.

## II. *ANALYSIS.*

Summary judgment is proper if the pleadings, depositions and affidavits, if any, show

---

1. Specifically, the plaintiffs seek information concerning: (1) the handling and evaluation of grievances or Equal Employment Opportunity Commission complaints submitted by employees in RTC's PLS; (2) the selection of attorneys as senior managers at the RTC's six post-reorganization field offices; (3) the selection of attorneys added to the PLS after March 1, 1992; (4) the RTC's retention of Baker & Hostetler and Morrison, Hecker, Curtis, Kuder, & Parrish after March 1, 1992; and (5) fee bills submitted by Baker & Hostetler for work done after April 1, 1992 on PLS cases handled by the RTC's Denver Field Office.

that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon mere allegations of the complaint, but must set forth evidence of specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party. *Id.*

### A. *Plaintiffs' Fee Waiver Request.*

■ Generally, persons making requests for information under the FOIA must pay for the direct costs of document search and duplication. *Kissinger v. Reporters Comm. for Freedom of Press,* 445 U.S. 136, 153–54, 100 S.Ct. 960, 970, 63 L.Ed.2d 267 (1980). Documents must be furnished free of charge or at a reduced rate, however,

"if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

■ The RTC has conceded that disclosure of the information is not primarily in the plaintiffs' commercial interest. It contests, however, that disclosure of the information is in the public interest. Plaintiffs bear the burden of demonstrating that it is. *Larson v. CIA,* 843 F.2d 1481, 1483 (D.C.Cir.1988).

To meet their burden, the plaintiffs must "provide information that addresses each of the [following] factors," 12 C.F.R. § 1615.-9(d):

(1) the subject of the request concerns the operations or activities of the government;

(2) disclosure of the requested information is likely to contribute to an understanding of government operations or activities;

(3) disclosure will contribute to public understanding; and

(4) disclosure is likely to contribute significantly to public understanding of government operations or activities. *Id.*

Plaintiffs seek information that they contend will assist their ongoing research and analysis of whether the RTC is wasting taxpayer funds and abusing its staff (factors one and two).[2] They further contend that they seek to obtain and interpret that data for the benefit of the public, to whom they intend to disseminate the information, as they have done in the past (factor three). Finally, they argue that the requested information is new and supports public oversight of the RTC, thereby maximizing the potential for contributing significantly to public understanding (factor four).

■ First, the RTC contends that these arguments were not before the RTC, are not part of the administrative record, and therefore cannot be the basis for the plaintiffs' fee waiver request.

The FOIA provides for *de novo* review of agency fee waiver determinations. 5 U.S.C. § 552(a)(4)(A)(vii). The court's inquiry, however, is limited to the record before the agency at the time the waiver decision was made.[3] *Id.*

A review of the administrative record reveals that the plaintiffs, in their appeal letter of November 17, 1992, informed the RTC that further information about the RTC legal division's attempt to streamline its operations is inherent to better understanding the RTC's activities. Further, they asserted that they have "clear intent to disseminate the information sought," as evidenced by their testimony before the Senate Banking Committee, which was reported widely in the national media. I conclude that such information addresses factors one through three above.

---

2. The RTC has conceded factor one.

3. Thus, as requested by the RTC, the court will disregard the plaintiffs' exhibits, other than the administrative record.

With respect to the fourth factor, the plaintiffs did not assert specifically the significance to the public of the information sought. Plaintiffs did, however, point out in their appeal letter that, following their testimony before the Senate Banking Committee,

"[a]rticles ... appeared in such print media as *The New York Times, The Washington Post, The Wall Street Journal, USA Today, American Banker, The National Law Journal, The Denver Post, Rocky Mountain News, Time Magazine,* and *Harper's Magazine.* Broadcast media also reported on our concerns. These included Street Stories (CBS News Show), CNN News, and various radio shows. Interest remains high. We continue to be contacted by members of the media requesting interviews and more information about the issues we first raised in August. Articles continue to appear on a weekly basis around the nation. Several more will appear this week alone."

■ Although each of the four factors must be addressed, the regulations do not require that requesters provide a certain amount or particular type of information. *See* 12 C.F.R. § 1615.9(d). Moreover, 5 U.S.C. § 552(a)(4)(A) "is to be liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282, 1284 (9th Cir.1987) (quoting 132 Cong.Rec. S14,-298 (Sept. 30, 1986) (statement of Sen. Leahy)). Indeed, in 1986 the statute was amended "to remove the roadblocks and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA." *Id.* (quoting 132 Cong.Rec. S16,496 (Oct. 15, 1986) (statement of Sen. Leahy)). Thus, I conclude that the appeal letter discussing the media attention given to the plaintiffs' testimony addressed sufficiently the significance of the related information sought.[4]

In light of the above, I decline to hold that the plaintiffs' arguments regarding public interest were not before the RTC when it denied the plaintiffs' fee waiver request for the second time.

Second, the RTC argues that the plaintiffs have failed to provide sufficiently specific information regarding each of the four factors. It concedes that the plaintiffs "addressed the ... factors set forth in § 1615.-9(d)(3) and (4) in their appeal letter," but asserts that "this treatment was inadequate." As seen, however, the regulations require only that the plaintiffs "address" each factor. Thus, I decline to hold that the plaintiffs failed to provide sufficiently specific information to support their request.

■ Third, the RTC asserts that the plaintiffs have failed to satisfy their initial burden of identifying the public interest to be served. Specifically, the RTC contends that the plaintiffs have failed to explain the significance to the public of some information and have presented only conclusory explanations of the public interest with respect to other information.

"[A]n agency may infer a lack of substantial public interest '[w]hen a public interest is asserted but not identified with reasonable specificity, *and circumstances do not clarify the point of the requests.*'" *McClellan,* 835 F.2d at 1285 (emphasis added). As RTC employees, the plaintiffs were well known throughout the RTC for their congressional testimony and the media attention they subsequently attracted. Further, at the time of their November 17 appeal letter, they still actively were exposing RTC mismanagement and disseminating their analyses. Thus, "it is apparent that defendants knew, or should have known, who plaintiffs were, what they wanted, and why." *Badhwar v. United States Dep't of Air Force,* 615 F.Supp. 698, 708 (D.D.C.1985).[5]

---

**4.** *See* Plaintiffs' Nov. 17 Appeal Letter ("Despite great risk to our RTC careers, we testified in open session regarding our concerns about the RTC PLS Program. The FOIA request in question pertains to the *very same subject matter.*") (emphasis added).

**5.** Indeed, the RTC acknowledges its familiarity with the plaintiffs' status as RTC employees, their

congressional testimony, and the subsequent media coverage, but argues that the plaintiffs have failed to describe the public interest in the specific categories of information at issue in this case. As seen, however, under *McClellan* an agency may not infer a lack of substantial public interest when circumstances clarify the point of the requests.

In light of the above, as well as the legislative intent to remove promptly the "roadblocks and technicalities" that have been used to deny fee waivers under the FOIA, I conclude that the plaintiffs have identified sufficiently the public interest to be served.

■ Fourth, the RTC contends that the plaintiffs have a personal interest in the requested information that undercuts their fee waiver request. To support its contention, the RTC points to electronic mail in the administrative record, in which Mr. Pederson asserted that "the FOIA requests seek information related to our pending grievances and EEO actions."

■ The FOIA is not to be used as a discovery tool. *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). Insofar as a requester seeks information merely to advance private lawsuits or administrative claims, its disclosure is less likely to contribute to public understanding. *McClellan*, 835 F.2d at 1287. On the other hand, "[t]he mere possibility of private lawsuits does not justify an agency in refusing to waive fees: public interest may be at peak precisely when there is potential for private lawsuits against the government." *Id.* at 1287 n. 4.

Here it is clear that the plaintiffs do not seek information "merely" to advance their administrative claims. That may be why the RTC did not base either of its fee waiver denials on this ground.[6] In light of the public interest in RTC mismanagement, I decline

to find that the plaintiffs' personal interest in the requested information undercuts their fee waiver request.

Fifth, the RTC asserts that the plaintiffs improperly have attempted to shift their burden of proof onto the RTC. Plaintiffs, however, have never disputed that they have the burden of justifying their fee waiver request.[7] This argument clearly provides no sufficient reason to grant the RTC's summary judgment motion.

Sixth, the RTC contends that the plaintiffs have failed to establish their ability to disseminate the information they have requested.

■ The absence of facts demonstrating an ability to disseminate information to the public is a sufficient basis for denying a fee waiver request. *Larson*, 843 F.2d at 1483. Plaintiffs, however, assert that they have three means to disseminate the information: (1) the hearing record of their testimony before the Senate Banking Committee,[8] and various periodicals, including *Harper's* magazine; (2) extensive media coverage of their statements, which continues to the present; and (3) a newsletter published by the Government Accountability Project (GAP).

I need not decide whether the plaintiffs can establish an ability to disseminate the information based upon the hearing record of their congressional testimony,[9] or upon the extensive media coverage of their statements,[10] because it appears that the plaintiffs

---

6. Indeed, in its first denial, the RTC states:

    "[Y]our fee waiver request indicates that your purpose in seeking the information is to enable GAP to provide legal and advocacy assistance to *other individuals* who might choose to 'blow the whistle.'"

7. Plaintiffs do suggest that an agency may be required to ask clarifying questions of a requester for better informed decisionmaking. The case law, however, does not support such a position. *See McClellan*, 835 F.2d at 1286–87.

8. The record has been made available for sale to the general public through the Government Printing Office.

9. See *Prows v. United States Dep't of Justice*, Civ. No. 87–1657–LFO, 1989 WL 39288, at *7 1989

U.S.Dist. LEXIS 3990, at *19 (D.D.C. Apr. 13, 1989), however, in which the court held that the requester's intention to present the material to a congressional committee did not establish his capacity—as opposed to his desire—to disseminate the information widely.

10. See *Larson*, however, in which the Court of Appeals for the District of Columbia observed that:

    "The legislative history of the FOIA fee waiver provision indicates 'a special solicitude for journalists.' ... This treatment, however, does not extend to citizens who intend to release requested information to journalists because 'such a rule would enable requesters to avoid fees simply by asserting an intention to give the released documents to a newspaper.'" 843 F.2d at 1483 n. 5 (citations omitted).

have established their ability to disseminate the information as clients of the GAP.

By letter of October 7, 1992, the plaintiffs informed the RTC that the GAP "is a non-profit, public interest organization" that "provides legal and advocacy assistance to concerned citizens who choose to 'blow the whistle.'" In their November 17, 1992 appeal letter, the plaintiffs stated that the "GAP would have an interest in the information encompassed by the subject FOIA request," a conclusion confirmed by the fact that the GAP had submitted its own overlapping FOIA request on November 3, 1992. Finally, also in their appeal letter, the plaintiffs asserted, "GAP has a national reputation for researching and publishing concerns held by government whistleblowers." [11]

Thus, it is clear that the RTC was aware of the GAP's interest in the information sought by the plaintiffs and of its ability to publish it. I conclude that this is sufficient to establish the plaintiffs' ability to disseminate the information. *Cf. McClain v. United States Dep't of Justice*, No. 91 C 0241, 1992 WL 358898, at \*2–\*3 1992 U.S.Dist. LEXIS 18080, at \*7 (N.D.Ill. Nov. 25, 1992) (holding that a requester's intent to give information to two public interest groups, "without any showing that these public interest groups are *interested* in the material or have the *ability to disseminate* it, is ... too tenuous to merit a fee waiver") (emphasis added), *aff'd*, 13 F.3d 220 (7th Cir.1993).

Seventh, the RTC argues that there is no exception to the dissemination requirement for government employees claiming to be whistleblowers. Because I have concluded that the plaintiffs have met the dissemination requirement, I need not consider whether such an exception exists.

Finally, the RTC contends that the plaintiffs rely on a variety of irrelevant factors to bolster their fee waiver case. I have not relied upon any of these arguably irrelevant factors to conclude that the plaintiffs have justified their fee waiver request under the statute. Plaintiffs' motion for summary

judgment regarding their fee waiver request will be granted.

### B. Plaintiffs' Request for Costs and Attorneys' Fees.

Plaintiffs seek their reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E). That section provides, "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."

▮▮▮ An attorney-fees-and-costs award under the FOIA is discretionary rather than presumptive. *Lovell v. Alderete*, 630 F.2d 428, 431 (5th Cir.1980). Once plaintiffs have prevailed substantially and thus become eligible for such an award, a court should determine whether they are entitled to the award in light of: (1) the benefit to the public deriving from the case; (2) the commercial benefit to the plaintiffs; (3) the nature of the plaintiffs' interest in the records sought; and (4) whether the defendant's withholding of the records sought had a reasonable basis in law. *Id.* at 431–32.

▮▮▮ I already have concluded that the public will benefit from disclosure of the information the plaintiffs seek, and the RTC has conceded that the plaintiffs do not have a commercial interest in the material. In addition, I find that the plaintiffs' interest in the information is "public-interest oriented." *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712 (D.C.Cir.1977). Thus, I conclude that, whether or not the RTC's withholding of the records sought had a reasonable basis in law, the *Lovell* factors weigh in favor of awarding the plaintiffs their reasonable costs and attorneys' fees pursuant to § 552(a)(4)(E).

### C. Plaintiffs' Request Regarding Written Findings of Arbitrary and Capricious Conduct.

Plaintiffs request that this court refer any written findings of arbitrary and capricious conduct by the RTC regarding this FOIA

---

11. Indeed, the RTC has recognized that the GAP is a "journalistic entity." (Def.'s Cross–Motion Summ.J. at 21).

request to the Office of the Special Counsel of the Merit Systems Protection Board so that it may take appropriate disciplinary action pursuant to 5 U.S.C. § 552(a)(4)(F).[12]

I have not issued any written findings that the RTC personnel may have acted arbitrarily and capriciously in denying the plaintiffs' fee waiver request, and I decline to do so at this time on the present record. Thus, the plaintiffs' § 552(a)(4)(F) request will be denied.

Accordingly IT IS ORDERED that:

(1) Plaintiffs' motion for summary judgment is granted;

(2) Defendant's cross-motion for summary judgment is denied;

(3) Defendant is ordered to waive search and copying fees in connection with the remaining items of the plaintiffs' FOIA request no. 92–1045 pursuant to 5 U.S.C. § 552(a)(4)(A)(iii);

(4) Plaintiffs are awarded attorneys' fees and costs reasonably incurred pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Plaintiffs' request that this court refer written findings of arbitrary and capricious conduct by the RTC regarding this FOIA request to the Office of the Special Counsel of the Merit Systems Protection Board pursuant to 5 U.S.C. § 552(a)(4)(F) is denied.

---

12.  That section provides:
"Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, *and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions* *whether agency personnel acted arbitrarily or capriciously with respect to the withholding,* the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding." (Emphasis added).