## INSTITUTE FOR WILDLIFE PROTECTION, Plaintiff,

v.

## UNITED STATES FISH AND WILDLIFE SERVICE, and United States Department of the Interior, Defendants.

No. CIV. 02–6178 AA.

United States District Court,
D. Oregon.

Oct. 8, 2003.

Don R. Webb, Staff Attorney, Institute for Wildlife Protection, Eugene, OR, for plaintiff.

Michael W. Mosman, United States Attorney, District of Oregon, Judith D. Kobbervig, Assistant United States Attorney, Portland, OR, for defendants.

## OPINION AND ORDER

AIKEN, District Judge.

The parties have crossed moved for summary judgment pursuant to Fed. R.Civ.P. 56. The court read the briefing and heard oral argument. Plaintiff's motion is granted, and defendants' motion is denied.

### BACKGROUND

Plaintiff brings this action challenging the decision of defendants Department of Interior (DOI) and the Fish and Wildlife Service (FWS), denying its request for a fee waiver for requested documents. Plaintiff undertook an analysis of the quality of petitions to list certain species or sub-species pursuant to section 4 of the Endangered Species Act (ESA). In accord with that analysis and pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552, et seq., plaintiff requested the following information from the defendants: (1) "All petitions to list a species, sub-species, or distinct population segment that use Geographic Information Systems (GIS) as part of the petition; and (2) all petitions to list a species, sub-species, or distinct population segment that use CAP analysis as part of the petition." GIS is a form of computerized mapping, and GAP analysis evaluates the "gap" between protected habitats and the needs of the species.

FOIA requires the federal government to furnish documents to public interest groups free of charge, or at a reduced rate, "if disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). Pursuant to that section, plaintiff requested a fee waiver for all copying costs, mailing costs, and other costs related to locating and tendering the records. Plaintiff stated that the release of these records is not for commercial use and is in the public interest. Plaintiff represents that it is a non-profit organization and has no commercial interest in the requested material.

By letter dated January 30, 2002, the FWS denied plaintiff's request for fee waiver. The letter stated that plaintiff was not entitled to a fee waiver because the disclosure of the requested information would not be in the public interest in that disclosure would not be likely to contribute significantly to public understanding of government operations and activities. The letter further stated that the documents sought by plaintiff were written by the public and not by the FWS and therefore

would not cast light on the operations of the FWS. The letter stated, "We do not believe that access to petitions, written by members of the public, that have used GIS and GAP analysis will contribute anything new to the public's understanding of the Service's endangered species program." The FWS also concluded that the plaintiff had failed to show that it would disseminate the requested information to the public at large rather than to a narrow segment of interested persons. Finally, the FWS advised the plaintiff that a response to the request would require a search of 80 FWS field offices at a cost in excess of $3,000.

On February 13, 2003, the plaintiff filed an administrative appeal. By letter dated March 29, 2003, the FOIA Appeals Officer, DOI, denied plaintiff's administrative appeal of the fee waiver. Plaintiff now brings the action at bar also alleging a claim under the Administrative Procedures Act (APA), 5 U.S.C. § 701.

## STANDARDS

### 1. Fed.R.Civ.P. 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Substantive law on an issue determines the materiality of a fact. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical,* 809 F.2d at 630.

### 2. FOIA Fee Waiver Denial

■ The judicial review accorded a fee waiver denial under the FOIA is de novo. *See* 5 U.S.C. § 552(a)(4)(A)(vii). The scope of judicial review, however, is limited to the administrative record established before the agency. *Friends of the Coast Fork v. Dept. of Interior,* 110 F.3d 53, 55 (9th Cir.1997). Therefore, under this standard, the court is limited to the administrative record to determine if the agency properly denied plaintiff's request for a fee waiver.

■ "Once the FOIA requester has made a sufficiently strong showing of meeting the public interest test of the statute, the burden, as in any FOIA proceeding, is on the agency to justify the denial of a requested fee waiver." *Coast Fork,* 110 F.3d at 55. The agency must adhere to the reasons given at the administrative level to prove their case and cannot later employ post hoc rationales:

> On judicial review, we cannot consider new reasons offered by the agency not raised in the denial letter . . . the agency must stand on whatever reasons for denial it gave in the administrative pro-

ceeding. If those reasons are inadequate, and if the requesters meet their burden, then a full fee waiver is in order.

*Id.* (internal citations omitted).

██ Finally, the court is mindful that Congress amended the FOIA to ensure that it is "liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282, 1284 (9th Cir.1987)(quoting 132 CONG. REc. 27,190 (1986)(Sen.Leahy)).

### DISCUSSION

### (1) APA

The complaint seeks relief under the APA as well as under FOIA. Plaintiff uses the same facts and requests the same relief under both the APA and FOIA. Under the facts at bar. I find no provision of the APA (other than FOIA) which provides for the disclosure of documents or for the waiver of fees. The FOIA is part of the APA and was originally enacted because the public disclosure section of the APA, formerly 5 U.S.C. § 1002, currently 5 U.S.C. § 552, had proven ineffective in providing disclosure of documents to the public. *See* S.Rep. No. 89–913 at 5 (1965).

Therefore, I find no separate entitlement to relief under the APA that is not adequately provided for by the FOIA. Plaintiff's claim under the APA is dismissed.

### (2) FOIA—FEE WAIVER

The FOIA provides that, " [d]ocuments shall be furnished without any charge or at a [reduced] charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the **commercial interest of the requester.**" 5 U.S.C. § 552(a)(4)(A)(iii).

The statute establishes a two-part test for considering fee waiver requests: (1) the grant of a fee waiver must be in the public interest because it will likely contribute significantly to public understanding of government operations and activities; and (2) the disclosure of the requested information must not be primarily in the commercial interest of the requester.

In assessing whether the first part of the fee waiver test has been met, the agency is to consider the following factors in sequence: (1) the subject matter of the requested records, in that the request must specifically concern identifiable operations or activities of the government; (2) the disclosable portions of the requested information must be meaningfully informative in relation to the subject matter of the request; (3) the disclosure must contribute to the understanding of the public at large, as opposed to an individual understanding by the requester or a narrow segment of interested persons; and (4) the disclosure must contribute "significantly" to public understanding of government operations or activities.

Plaintiff asserts that it is entitled to a fee waiver based on three separate categories: member of the news media, scientific institution, and public interest. Because I find that plaintiff qualifies for a fee waiver under the public interest exception, I find no need to consider plaintiff's other proposed exceptions.

### NONCOMMERCIAL REQUESTER

Plaintiff first asserts that the defendants failed to determine initially whether plaintiff was a commercial or noncommercial requester. That determination is important as only noncommercial requesters are entitled to two hours free search time and to 100 free copies. 43 C.F.R. §§ 2.20(c), (d), (e). Plaintiff specifically applied as a "noncommercial entity" and requested the

two hours free search time and 100 free copies. Plaintiff argues that because defendants failed to make this initial determination, defendants' decision cannot survive a de novo standard of review.

I find that defendants did, in fact, find that plaintiff was properly classified as a noncommercial requester. In the defendants' January 30, 2002, denial letter, the FWS treated the plaintiff as a noncommercial user stating, "we believe you are appropriately classified as an 'other' requester in accordance with 43 C.F.R. § 2, and advis[ed] the [plaintiff] that under this category, requesters are charged fees for document search and duplication, except that they are entitled to the first two hours of search time and the first 100 pages of paper copies without charge."

I therefore find that defendants properly classified plaintiff as a noncommercial requester thus entitling plaintiff to two hours of search time and 100 pages of paper copies without charge.

PUBLIC INTEREST

In order to demonstrate that a FOIA request is in the public interest, and therefore eligible for a fee waiver, the requester must show that disclosure of the information "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The defendants do not assert that the requests serve plaintiff's commercial interests, so this case turns on whether disclosure of the information is "likely to contribute significantly to public understanding of the [FWS's] operations or activities[.]" *Id.*

 The FOIA also requires agencies to establish guidelines for determining when fees should be waived or reduced. 5 U.S.C. §§ 552(a)(4)(A)(I). I note, however, that the court owes no particular deference to the agency's interpretation of

FOIA. *See Judicial Watch, Inc. v. Rossotti,* 326 F.3d 1309, 1313 (D.C.Cir.2003). The Department of the Interior issued fee waiver guidance, which is found at 43 C.F.R. § 2.21. The DOI's fee waiver regulations provide that, "[r]ecords developed outside of the government and submitted to or obtained by the Department may relate to the operations and activities of the government if they are informative on how an agency is carrying out its regulatory, enforcement, procurement or other activities that involve private entities." 43 C.F.R. § 2.21(a)(2)(i). The March 22, 2002, opinion from the Office of the Solicitor concluded that the requester "had not explained how release of GIS or GAP information included in petitions [that] third-parties submit to FWS will benefit the public at large or cast light on agency operations." The defendants argue that while the petitions and the GIS or GAP analyses they include may be informative as to the views of the parties submitting the petitions, the information casts no light on the "operations and activities" of the FWS. Defendants assert that the documents subject to plaintiff's request do not show the manner in which the FWS considers or analyses GIS or GAP information in making listing decisions and are no more informative of FWS operations than letters submitted by members of the public to the agency.

Therefore, the defendants assert, plaintiff's fee waiver request fails to satisfy both the first and fourth elements of the fee waiver test. The subject matter of the request does not concern specifically identifiable operations of the government; and disclosure would not contribute "significantly" to public understanding of government operations or activities.

Finally, the defendants assert that plaintiff's fee waiver request failed to satisfy the third element of the test—that disclo-

sure must contribute significantly to the understanding of the public at large as opposed to the individual understanding of the requester or a narrow segment of interested persons.. The defendants argue that plaintiff's request failed to show how it intended to disseminate the information beyond placing it in two university libraries and putting in on the Internet.

I disagree and find that plaintiff is entitled to a fee waiver under the public interest exception. In 2001, plaintiff began collecting documents for a study of FWS listing activities pursuant to Section 4 of the ESA, including the "quality of petitions to list" species submitted to FWS, and the interaction of petitioner with FWS "during the listing process." Plaintiff focused its attention on two recent technical and scientific analyses, GIS and GAP analysis, requesting copies of petitions from FWS that relied on either technique. To lessen any burden on FWS, plaintiff allowed FWS to exclude petitions that merely referred to these techniques without actually using them.

Plaintiff asserts, and I agree, that there is substantial public interest in agency activities relating to endangered species and regarding "how well environmental and scientific organizations interact with FWS." Further, there is public interest in the "quality of science used by FWS," giving examples such as the location of endangered species listings near water sources used by farmers in the Klamath Basin, and the science used to identify fur samples thought to be from the lynx.

Specifically, plaintiff intends to combine information from its "campaign to collect information from various environmental groups" on their petitions and agency responses to those petitions "together with the information requested [from FWS]" to "analyze FWS interactions with the public and scientific organizations during the listing process." Plaintiff theorizes that

FWS's copies of petitions are "likely to contain marginal notes from FWS biologists, whose opinions are often ignored or overturned by defendants' political appointees." See *Friends of the Wild Swan v. FWS*, 12 F.Supp.2d 1121, 1133 (D.Or.1997) ("USFWS seems to have ignored its own conclusion" re threats to bull trout).

In conclusion, plaintiff asserts that "marginal notes by agency biologists on received petitions, as well as the combination of petitions with documents collected directly from petitioning environmental groups would enable the [plaintiff] to produce new, derivative work that would enable the public to better understand agency operations in carrying out the [ESA]."

The plaintiff specifically explained in its fee waiver request that it gathers information of at least potential interest to the public, uses its analytic and editorial skills to create a distinct work, and then distributes that work to various audiences. In its request and appeal, the plaintiff stated that the information was of great public interest because the records concerned endangered species, cited the public and Congressional interest in recent reports on FWS use (or misuse) of science in endangered species actions, and gave an example of how GIS information would be of interest to the public.

The plaintiff also provided a description of its expertise in analyzing this type of information, and stated its ability and intent to "produce a shorter, abstracted, informative analysis for the public." The plaintiff noted that it would analyze the records requested in combination with a "campaign to collect information from various environmental groups regarding how the FWS has communicated with them and responded to their petitions to list." Thus, plaintiff asserts, two sets of raw materials would be turned into a distinct work by

the analytic and editorial efforts of plaintiff.

Finally, plaintiff's intent to disseminate the resulting work to an audience was expressed clearly and repeatedly. Not only did the plaintiff state that it would disseminate the material via discussions in University classes, but also by postings to web pages and electronic mailing lists, deposits in libraries, publication in scientific journals and in popular news outlets. The plaintiff further informed the FWS that dissemination of information about government operations affecting wildlife was contained in the plaintiff's charter and was a primary organization purpose. Plaintiff states that it is "organized to analyze information regarding wildlife and to disseminate that information to the public and to state and federal agencies."

Finally, I note that strong policy considerations support a fee waiver in this case. The legislative history discussed in *McClellan supra*, *National Security Archive v. U.S. Dept. of Defense*, 880 F.2d 1381 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990), and other cases demonstrates that Congress intended independent researchers, journalists, and public interest watchdog groups to have inexpensive access to government records in order to provide the type of public disclosure believed essential to our society. Moreover, in the 1986 amendments to FOIA, Congress ensured that when such requesters demonstrated a minimal showing of their legitimate intention to use the requested information in a way that contributes to public understanding of the operations of government agencies, no fee attaches to their request.

## CONCLUSION

Plaintiff's motion for summary judgment (doc. 23) is granted. Defendants' motion for summary judgment (doc. 21) is denied.

Plaintiff is entitled to a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) because disclosure of the information is in the public interest. This case is dismissed.

IT IS SO ORDERED.