**SOUTHEASTERN LEGAL FOUNDATION, INC.,**
Plaintiff,

v.

**UNITED STATES ENVIRONMENTAL PROTECTION DIVISION,**
Defendant.

**CIVIL ACTION NO. 1:15-cv-0386-AT**

United States District Court,
N.D. Georgia, Atlanta Division.

Signed March 30, 2016.

---

Kimberly Stewart Hermann, Shannon Lee Goessling, Southeastern Legal Foundation, Inc., for Plaintiff.

Matthew A. Josephson, United States Department of Justice, for Defendant

## ORDER

Amy Totenberg, United States District Judge

This suit brought by the Southeastern Legal Foundation ("SLF") under the Freedom of Information Act ("FOIA") seeks judicial review of the Environmental Protection Agency's ("EPA") processing of three separate FOIA requests, dated December 18, 2009, April 22, 2010, and November 22, 2013. It is before the Court on the parties' Cross-Motions for Summary Judgment [Docs. 14, 15, 19, 24].

## I. BACKGROUND

Plaintiff Southeastern Legal Foundation, Inc. ("SLF") is a self-described "non-profit public interest law firm specializing in the practice of constitutional law" and "undertakes research on policy issues of interest to the public." (SLF Ex. B-1/Tab 22.) "Fundamental to [SLF's] core mission is research into the activities of the Federal Government." (SLF Ex. B-4/Tab 25 at 1.) According to its Complaint, SLF also operates as "a policy center that advocates constitutional individual liberties, limited government and free enterprise in the courts of law and public opinion," and its work includes "advancing responsible regulation and [ ] challenging regulations based on flawed science and political agendas." (Compl. ¶ 7.) SLF's "programs include analysis, publication and a transparency initiative seeking public records relating to environmental and energy policy and how policymakers use public resources." (Id.)

"SLF's primary mission is to disseminate information to the public through research into the functioning of all levels of government and, where appropriate, effect public policy through litigation." (SLF Ex. B-4/Tab 25 at 2.) In furtherance of that mission, SLF disseminates information through a number of means, including: (i) its publicly available website and ancillary websites set up to disseminate information about ongoing litigation projects, e.g., www.epalawsuit.com; (ii) through mailing lists; (iii) press releases; and (iv) published "op-eds" in local and national newspapers and other media. (Id.) According to SLF, "[a]s a non-profit SLF has no commercial interests in the information [SLF] collect[s] from the Federal Government," and SLF's "profit derives from the benefit [SLF] provide[s] the public through [its] research, dissemination and litigation." (Id.)

### A. SLF's December 18, 2009 FOIA Request

On December 18, 2009, SLF submitted a request under FOIA to EPA seeking documents related to EPA's "Endangerment Findings,[1]" on climate change/global warming, defined in the FOIA Request as (FOIA Request No. HQ-FOI-00469-10):

a. Endangerment Finding: The Administrator finds that the current and projected concentrations of the six key well-mixed greenhouse gases—carbon dioxide (CO2), methane (CH4), nitrous oxide (N20), hydrofluorocarbons (HFCs), perfluorocarbons (PFCs), and sulfur hexafluoride (SF6)—in the atmosphere threaten the public health and welfare of current and future generations; and

b. Cause or Contribute Finding: The Administrator finds that the combined emissions of these well-mixed greenhouse gases from new motor vehicles and new motor vehicle en-

1. See Endangerment or Cause Contribute Findings for Greenhouse Gases under Section 202 (a) of the Clean Air Act (CAA), 74 Fed. Reg. 66,496 (Dec. 15, 2009).

gines contribute to the greenhouse gas pollution which threatens public health and welfare.

(SLF Ex. A-1/Tab 1.) Specifically, SLF sought records: (1) discussing the timing of the release of the Endangerment Findings, including "discussions about coinciding the Endangerment Findings with the "United Nations Climate Change Conference" held December 7, 2009 through December 18, 2009 in Copenhagen, Denmark;" (2) discussing public comments related to the Endangerment findings and EPA's responses to the public comments; and (3) discussing or analyzing the financial implications or consequences of the Endangerment Findings. (Id.)

SLF requested a waiver of the fees associated with the search, review, and reproduction of documents, which EPA granted following an administrative appeal on February 3, 2010. (Id.; SLF Exs. A-3, A-4, A-5, A-7, A-8; Declaration of Rona Birnbaum ¶¶ 12-13.)

Seven months after submitting its FOIA request, SLF discovered that EPA had undertaken no search for the requested records. (SLF Exs. A-9 & A-10.) On July 16, 2010, EPA produced four documents in response to the request and agreed to produce the remaining documents on a rolling basis. (SLF Ex. A-11.) Over 15 months passed before EPA produced its second batch of documents on November 29, 2011. (SLF Ex. A-15.) EPA completed its production over the next three months in January and February 2012. (SLF Exs. A-16 through A-21.)

In total, EPA located approximately 8,819 documents that were potentially responsive to SLF's request. (Birnbaum Decl. ¶ 24.) Following its review of the documents for responsiveness and for exempt information, EPA identified approximately 3,166 records responsive to SLF's FOIA request and released 2,327 records, of which 111 records were released in full,

2,216 records were released in part, and 839 records were withheld in full. (Birnbaum Decl. ¶¶ 31, 37.) Records were withheld in full or in part under Exemptions 5 and 6 of the FOIA. (Birnbaum Decl. ¶ 39.) Some records or portions of records were withheld under both exemptions. (Id.) EPA withheld portions of approximately 2,943 records (839 withheld in full and 2,104 withheld in part) from disclosure under Exemption 5 and the deliberative process privilege. (Birnbaum Decl. ¶ 40.) EPA withheld 70 records from disclosure under Exemption 5's attorney-client privilege of the FOIA. (Birnbaum Decl. ¶ 48.) EPA withheld 22 records from disclosure under Exemption 5's attorney work product privilege of the FOIA. (Birnbaum Decl. ¶ 51.) EPA partially withheld portions of 719 records from disclosure under Exemption 6 of the FOIA which contained personal, medical, and health information of an EPA employee or family member. (Birnbaum Decl. ¶¶ 54-55.) EPA partially withheld non-responsive material from 21 records because the information was outside the scope of the request. (Birnbaum Decl. ¶ 58.)

SLF brought this suit to challenge EPA's withholding and redacting of information responsive to its December 2009 FOIA Request for records relating to EPA's Endangerment Findings under FOIA Exemptions 5 and 6. (See Compl. ¶¶ 142-150.)

### B. SLF's April 12, 2010 FOIA Request

On April 12, 2010, SLF submitted a FOIA request to EPA seeking records regarding awards or grants of federal funds for research on global climate change (FOIA Request No. HQ-FOI-1115-10). (SLF Ex. B-1/Tab 22.) Specifically, SLF sought: (a) grant applications seeking federal funds for any and all research on global climate change; (b) awards, grants,

or funding notifications made pursuant to applications seeking federal funds for research on global climate change; (c) correspondence between EPA and grant applicants or recipients; (d) denial or deferral of awards, grants, or funding made in response to applications seeking federal funds for research on global climate change; (e) contracts entered by the funding grantee or its principal investigator in furtherance of or in conjunction with federally funded research on global climate change. (*Id.*)

SLF sought a waiver of the search, review, and reproduction fees under FOIA associated with its request. (SLF Ex. B-1/Tab 22.) On April 20, 2010, EPA requested that SLF provide additional information in support of its request for a fee waiver and to address "in sufficient detail" the following six regulatory factors:

1. The subject matter of the requested records must specifically concern identifiable operations or activities of the government.

2. For the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the releasable material must be meaningfully informative in relation to the subject matter of the request.

3. The disclosure must contribute to the understanding of the public at large, as opposed to the understanding of the requester or a narrow segment of interested persons.

4. The disclosure must contribute "significantly" to public understanding of government operations or activities.

5. The extent to which disclosure will serve the requester's commercial interest, if any.

6. The extent to which the identified public interest in the disclosure out-weighs the requester's commercial interest.
(SLF Ex. B-3/Tab 24.)

On April 27, 2010, SLF supplemented its FOIA fee waiver request, relying primarily on EPA's prior grant of a fee waiver (after an appeal to the Office of General Counsel) in connection with SLF"s December 2009 FOIA Request for documents relating to EPA's December 7, 2009 Endangerment and Cause or Contribute Findings on greenhouse gases/climate change/global warming. (SLF Ex. B-4/Tab 25; Ex. B to Ex. B-4.) SLF characterized the December 2009 and April 2010 requests as similar because "[b]oth requests seek information regarding different aspects of the same issue: EPA determinations and decision-making processes involving anthropogenic global warming or climate change." (SLF Ex. B-4/Tab 25 at 2.) SLF further explained that (a) "the Request centers on EPA decision-making processes involving the awarding of scientific grants to various persons or institutions;" (b) "these grants and denials of grants involve U.S. taxpayer dollars and how EPA chooses to disperse those dollars for research involves a specific activity of the government;" (c) "the disclosure would elaborate on ... how and under what criteria ... EPA award[s] or den[ies] scientific grants to persons and institutions [and] any insight into this process would be meaningfully informative to the general public;" (d) SLF would "disseminate the information gathered through the Request to the largest audience possible ... through our publicly available website and ancillary websites created for specific litigation; mailers and publications we produce throughout each year; and any publically available court documents used as evidence in litigation;" and (e) as a nonprofit enterprise, SLF has no commercial interest in the information collected through the FOIA request. (*Id.* at 3.)

On May 4, 2010, EPA's National FOIA Officer, Larry Gottesman, responded stating "after reviewing your [April 27, 2010] fee waiver justification, your request for a fee waiver is denied. You have not expressed a specific intent to publish or disseminate the information to the general public. In fact you stated that the records will be 'publically available court documents used as evidence in litigation.'" (SLF Ex. B-5/Tab 26.)

On June 3, 2010 SLF administratively appealed EPA's denial of the fee waiver request. (SLF B-6/Tab 27.) In its appeal, SLF explained that its FOIA request "asked for information related to [EPA's Endangerment] Findings, or other ways the EPA is involved [in] funding research into 'anthropogenic global warming and climate change,'" that "the potential effects of a carbon reduction regulatory scheme based on the [Endangerment] Findings will have vast and numerous implications for the U.S. economy, and all of its citizens," and that SLF's "goal in requesting this information is to ensure all U.S. citizens are fully informed on these implications, and to investigate the constitutionality of any regulatory action promulgated by the EPA based on the Findings." (*Id.* at 4.) SLF again explained that it would "undertake all necessary effort to ensure" the dissemination of the information in the Request to the largest audience possible through its websites, publications, mailings, and court documents. (*Id.*)

Over a year later, on August 16, 2011, EPA denied SLF's fee waiver request. (SLF Ex. B-15/Tab 34.) Despite finding that SLF's commitment to display the information on its website and incorporate the information into its various mailers indicated that the information would likely contribute to the understanding of "a reasonably broad audience of persons interested in the subject," SLF had not satisfied the remaining reg-ulatory public interest factors under FOIA's fee waiver provision. (*Id.* at 2-3.) Specifically, EPA found that SLF failed to demonstrate that (1) all of the requested information concerned government operations or activities, and (2) how the requested information would likely contribute to an increased public understanding of government operations and activities because there was no nexus between SLF's request and the stated informative value of the information. (*Id.*)

SLF followed up on the status of its FOIA request on September 26, 2011 October 14, 2011, and October 25, 2011, and requested an estimate of the cost associated with the processing of the April 2010 FOIA request. (SLF Ex. B-16/Tab 35; Ex. B-17/Tab 36.) On December 7, 2011, EPA notified SLF via email that it had identified 117 grants that may be responsive to the request, estimated that the total cost for search and duplication was $2,000, and that it would take approximately eight months to process the documents. (SLF Ex. B-18/Tab 37.) The next day, December 8, 201, SLF responded that because EPA failed to provide SLF with an initial determination within the 20 days required under FOIA, EPA was not permitted to assess search fees. (SLF Ex. B-19/Tab 38.)

SLF again followed up on the status of its FOIA request on February 8, 2012, February 20, 2012, March 4, 2012, and May 4, 2012. (SLF Ex. B-21/Tab 39; Ex. B-22/Tab 40; Ex. B-24/Tab 42.) On May 16, 2012, SLF submitted an administrative appeal to EPA for the delay in processing its April 2010 FOIA request for documents relating to federal grants for scientific research on global climate change. (SLF Ex. B-25/Tab 43.) On June 21, 2012, EPA notified SLF that it was entitled to a fee waiver with respect to search costs and that EPA would contact SLF by July 3, 2012 with an estimated processing date

and duplication costs. (SLF Ex. B-27/Tab 44.)

On July 5, 2012, EPA informed SLF that the estimated cost for duplication would be approximately $1,125, and it would take another five months to process the request. (SLF Ex. B-28 at 3/Tab 45.) On September 10, 2012, SLF responded that it would not "approve the cost estimate of $1,125 and time estimate of five additional months to process the April 20, 2010 FOIA request" and that all "costs could be avoided by transmitting responsive documents electronically." (Id. at 2.) SLF requested that EPA immediately arrange supply all of the documents in electronic format at no charge. (Id.) On September 18, 2012, EPA replied that without SLF's assurance of payment, the April 2010 FOIA request would not be processed and would be administratively closed. (Id. at 1.)

SLF brought this suit to challenge EPA's denial of a public interest fee waiver for SLF's April 2010 FOIA Request for records relating to federal funding of grants for scientific research on global climate change and EPA's failure to provide documents responsive to SLF's April 2010 FOIA Request in electronic format and subsequent administrative closure of SLF's April 2010 FOIA Request without producing any documents. (Compl. ¶¶ 151-166, 167-174.)

## C. SLF's November 22, 2013 FOIA Request

On November 22, 2013, SLF submitted a FOIA request to EPA seeking documents related to EPA's FOIA Annual Reports for the fiscal years 2009 through 2012 (FOIA Request No. EPA-HQ-2014-001489). (SLF Ex. C-1/Tab 46.) Specifically, SLF sought: (1) documents that reflect the underlying data of, or was used, created or complied in the preparation of certain sections of the FOIA Annual Reports;

and (2) documents that discussed those sections of EPA's FOIA Annual Reports. (Id.) SLF sought a waiver of search, review, and production fees, which EPA initially denied, but ultimately deemed moot after it determined there were no billable fees associated with the request. (Id.; Exs. C-3 through C-11/Tabs 48-56.)

On January 13, 2014, SLF administratively appealed EPA's delay in processing its November 2013 FOIA request. (SLF Ex. C-7/Tab 52.) Three months later on March 6, 2014, EPA responded to SLF's FOIA request for "written and electronic documents, data, memoranda, or reports created by any employee, agent, or consultant of the EPA that reflects the underlying data of, or was used, created or compiled in the preparation of" EPA's Annual FOIA Reports from October 1, 2008 to September 30, 2012, stating:

> EPA used FOIA Xpress, as the tracking tool and to create EPA's FOIA Annual Reports which are the subject of your request. FOIA Xpress is a propriety [sic] software tool that is no longer being used by EPA or being supported by the vendor. In the past when we received a similar request, the vendor had to run a special report, through the "back-end," which we do not have access to. Accordingly, we are unable to produce any data from FOIA Xpress. However, EPA Annual Reports are available on line at http://www.epa.gov/foia/annual.html.

(SLF Ex. C-9/Tab 54.) SLF administratively appealed EPA's "refusal to disclose" documents in response to its request relating to EPA's Annual FOIA Reports on April 4, 2014. (SLF Ex. C-10/Tab 55.)

After receiving no response, SLF filed suit in this Court on February 9, 2015. As a result, EPA administratively closed the November 2013 FOIA Request. During the pendency of this law suit, however, Larry Gottesman searched his files and

EPA's Electronic Content Management System, and instructed EPA staff in the Office of General Counsel to search their files and the files of a former EPA contractor for documents responsive to the portion of SLF's FOIA request asking for any "[w]ritten or electronic correspondence, data, memoranda, or reports" discussing the identified sections of EPA's Annual FOIA Reports for fiscal years 2009 to 2010. (Declaration of Larry Gottesman ¶¶ 14-15.) The searches resulted in locating approximately 107 responsive documents. (*Id.* ¶¶ 14-16.) EPA redacted and withheld portions of 6 documents, consisting of approximately 17 partially redacted pages under FOIA Exemption 5 and the deliberative process and attorney-client privileges. (Gottesman Decl. ¶ 17.) EPA released all other responsive information in full to SLF, including multiple drafts of the FOIA Annual Reports for fiscal years 2009 through 2012 which were transmitted between EPA staff, EPA contractors, and the Department of Justice. (*Id.*)

SLF brought this suit to challenge EPA's failure to produce any documents responsive to SLF's November 2013 FOIA Request, including the failure to produce "the underlying raw statistical data supporting its Annual FOIA reports for years 2009 through 2012" and related communications "because a third party maintained the requested records." (Compl. ¶¶ 175-181.)

In sum, SLF's suit challenges: (1) EPA's withholding and redacting of information responsive to its December 2009 FOIA Request for records relating to EPA's Endangerment Findings under FOIA Exemptions 5 and 6, (Compl. ¶¶ 142-150); (2) EPA's denial of a public interest fee waiver for SLF's April 2010 FOIA Request for records relating to federal funding of grants for scientific research on global climate change, (Compl. ¶¶ 151-166); (3) EPA's failure to provide documents re-

sponsive to SLF's April 2010 FOIA Request in electronic format and subsequent administrative closure of SLF's April 2010 FOIA Request without producing any documents, (Compl. ¶¶ 167-174); (4) EPA's failure to produce any documents responsive to SLF's November 2013 FOIA Request, including the failure to produce "the underlying raw statistical data supporting its Annual FOIA reports for years 2009 through 2012" and related communications "because a third party maintained the requested records," (Compl. ¶¶ 175-181.)

## II. STANDARD OF REVIEW

### A. Freedom of Information Act ("FOIA")

 Congress adopted the Freedom of Information Act as a searchlight to encourage open disclosure of public information. *Baldrige v. Shapiro*, 455 U.S. 345, 351, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220–21, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Chilivis v. S.E.C.*, 673 F.2d 1205, 1210–11 (11th Cir.1982). The intent of FOIA is to balance the public's need for access to information with the Government's need, under some circumstances, for confidentiality. *Weinberger v. Catholic Action*, 454 U.S. 139, 144, 102 S.Ct. 197, 70 L.Ed.2d 298 (1981); *Chilivis*, 673 F.2d at 1210; *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F.Supp.2d 13, 22–23 (D.D.C. 2011) (quoting *United Techs. Corp. v. U.S. Dep't of Defense*, 601 F.3d 557, 559 (D.C.Cir.2010)) ("The strong interest in transparency must be tempered, however, by the "legitimate governmental and private interests [that] could be harmed by release of certain types of information."). FOIA is a "broad disclosure statute which evidences a strong public policy in favor of public access to information in the possession of federal agencies." *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1554 (11th Cir.

1990) *rev' on other grounds U.S. Dep't of State v. Ray*, 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (quoting *Cochran v. United States*, 770 F.2d 949, 954 (11th Cir.1985)) (internal quotations and citations omitted). "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7–8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (quoting *Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

■ FOIA mandates disclosure of a federal agency's records, upon request, unless the documents fall within certain enumerated statutory exemptions permitting agencies to withhold information from FOIA disclosure. *Klamath Water Users Protective Ass'n*, 532 U.S. at 7, 121 S.Ct. 1060 (citing 5 U.S.C. §§ 552, 552(b)); *Chilivis*, 673 F.2d at 1210–11 ("[R]ecords and documents held by federal agencies are presumed subject to disclosure unless the agency can establish that the material falls into one of the FOIA's nine exemptions."); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C.Cir.1980) ("The clear purpose of the FOIA is to assure that the public has access to all government documents, subject to only nine specific limitations, to be narrowly interpreted, which Congress decided were necessary to protect our national interests and permit the efficient operation of the government.") Because the presumption favors disclosure, FOIA must be construed broadly and its exemptions must be construed narrowly. *Ray v. U.S. Dep't of Justice*, 908 F.2d at 1554; *Klamath Water Users Protective Ass'n*, 532 U.S. at 8, 121 S.Ct. 1060 (quoting *U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136, 151, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989)) ("[c]onsistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass"); *FBI v. Abramson*, 456 U.S. 615, 630, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) ("FOIA exemptions are to be narrowly construed"); *Chilivis*, 673 F.2d at 1211.

■ FOIA provides for judicial review of agency FOIA decisions and "[o]n complaint, the district court of the United States ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). When the government seeks to invoke an exemption from disclosure, it bears the burden of proving that the exemption applies. *Ray v. U.S. Dep't of Justice*, 908 F.2d at 1554 (11th Cir.1990) (citing *Cochran v. United States*, 770 F.2d at 954 and *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)); *Ely v. F.B.I.*, 781 F.2d 1487, 1489–90 (11th Cir. 1986) (an agency has the burden of proving that it properly invoked any FOIA exemptions when it decided to withhold information); *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C.Cir.2003) (the government agency has the burden to demonstrate that the documents requested are exempt from disclosure).

## B. FOIA Fee Waivers

■ The Freedom of Information Act permits agencies to charge search and duplication fees to requesters. *See* 5 U.S.C. § 552(a)(4)(A). Congress requires federal agencies under FOIA to provide requested documents free of charge, however, if disclosure of the requested information is (1) "in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). "A requester seeking a fee waiver bears the initial burden of identifying the public interest to be served," and that public inter-

est must be asserted with reasonable specificity. *National Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C.Cir.1987); *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C.Cir.1988) (per curiam).

In a FOIA fee waiver case, the district court conducts a de novo review of an agency's denial of a fee waiver request; however, the district court is limited to the record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii); *see National Treasury Employees Union v. Griffin*, 811 F.2d 644, 648 (D.C.Cir.1987) ("The [requester's] failure to demonstrate a public interest before the agency cannot be remedied by doing so before a court."); *Larson v. CIA*, 843 F.2d at 1482–83 (highlighting the change in the standard of review from the arbitrary and capricious standard under the APA to the de novo standard under the FOIA fee waiver statute as amended by Congress in 1986). The FOIA fee waiver provision should be " 'liberally construed in favor of waivers for noncommercial requesters.' " *Judicial Watch, Inc. v. Rosotti*, 326 F.3d 1309 (D.C.Cir.2003) (quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir.1987) (quoting 132 Cong. Rec. 27,190 (1986) (Sen. Leahy))); *Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005); *Schoenman v. F.B.I.*, 604 F.Supp.2d 174, 188 (D.D.C.2009); *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 581 F.Supp.2d 491, 497 (S.D.N.Y.2008).

### C. Summary Judgment

FOIA cases are generally handled on motions for summary judgment. *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008); *Miscavige v. I.R.S.*, 2 F.3d 366, 369 (11th Cir.1993). Summary judgment should be granted where there exists "no genuine issue as to any material fact" and the moving party "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

An agency is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record, which is located, was either produced to the plaintiff or is exempt from disclosure. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C.Cir.1980). In the FOIA context, summary judgment is justified if the affidavits or other documents describe the documents and "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C.Cir. 2009) (citing *Miller v. Casey*, 730 F.2d 773, 776 (D.C.Cir.1984); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). *See also Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir.1993) ("we hold that in certain cases, affidavits can be sufficient for summary judgment purposes in an FOIA case if they provide as accurate a basis for decision as would sanitized indexing, random or representative sampling, in camera review, or oral testimony"); *Miccosukee Tribe of Indians of Florida v. U.S.*, 516 F.3d 1235, 1257–58 (11th Cir.2008) (noting that a trial court may utilize various methods depending on the circumstances of the case, including, agency affidavits to determine whether an adequate factual basis exists for the agency's disclosure of information in response to a FOIA request).

In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester. *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 514 (D.C.Cir.1996); *Weisberg v. United*

*States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984); *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F.Supp.2d 13, 24 (D.D.C.2011).

## III. DISCUSSION

The parties have filed opposing summary judgment motions on SLF's FOIA claims. SLF and EPA each seek judgment in their favor on SLF's claims that EPA improperly denied SLF's requests for a public interest fee waiver and failed to provide documents in response to SLF's April 2010 and November 2013 FOIA Requests. EPA also moved for summary judgment on SLF's claim that EPA improperly withheld and redacted documents under FOIA's statutory exemptions.

### A. SLF's December 2009 FOIA Request for Documents Related to EPA's Endangerment Findings

 Immediately after EPA's Administrator issued its Endangerment and Cause or Contribute Findings on greenhouse gasses on December 7, 2009,[2] SLF made a request under FOIA on December 18, 2009 for records relating to (1) the timing of EPA's Endangerment and Cause or Contribute Findings, (2) the public comments related to the Endangerment Findings, and (3) the financial implications or consequences of the Endangerment Findings. (SLF Ex. A-1/Tab 1.) After being stalled by EPA for years in producing documents responsive to its request, and after EPA produced heavily redacted documents in fits and bursts on a rolling basis

over a nearly two year period, SLF filed suit in this Court under FOIA's judicial review provision.[3] In its Complaint, SLF challenged EPA's alleged improper redaction and withholding of responsive documents under Exemptions 5 and 6 of FOIA, (Compl. ¶¶ 49-62, 142-150), and sought an order from the Court: (1) directing EPA to preserve all potentially responsive records, (2) declaring that EPA has wrongfully withheld records responsive to the request, and (3) declaring that EPA must process and produce immediately all responsive records in unredacted form. (Compl. ¶¶ 182-83.) These are the only claims asserted in SLF's Complaint on its December 2009 FOIA Request.

During the litigation, SLF and EPA agreed that EPA would prepare a sample *Vaughn* index detailing the basis for the asserted FOIA Exemptions for use in conjunction with the parties' summary judgment motions on SLF's December 2009 FOIA Request.[4] (*See* Doc. 11 at 2; Doc. 12.)

In seeking summary judgment on SLF's claim that EPA improperly withheld information under FOIA's statutory Exemptions 5 and 6, EPA first raised what it perceived to be a threshold issue—that it conducted an adequate search for responsive records to SLF's December 2009 FOIA Request. The majority of EPA's motion addressed SLF's claims. EPA argued, relying on the sample *Vaughn* index, that the agency had properly asserted the deliberative process, attorney-client, and

---

**2.** The Administrator signed the Endangerment Finding and Cause or Contribute Finding on December 7, 2009. On December 15, 2009, the Findings were published in the Federal Register. The final rules were effective January 14, 2010. (Compl. ¶¶ 13-14.)

**3.** Prior to filing suit, on March 29, 2012, "SLF administratively appealed EPA's failure to disclose in their entirety existing records responsive to [SLF's December 2009] Re-

quest." (Compl. ¶ 60; SLF Ex. A-22/Tab 19.) EPA responded with its final determination on May 1, 2012, granting in part and denying in part SLF's administrative appeal. (Compl. ¶ 62; SLF Ex. A-24/Tab 21.)

**4.** EPA then moved for summary judgment on SLF's claim on August 18, 2015 and SLF filed its response and cross-motion on September 17, 2015.

work product privileges under FOIA Exemption 5 and had properly redacted personal information of its employees under FOIA Exemption 6. In response, SLF only addressed EPA's threshold contention that it had conducted an adequate search for responsive records. SLF did not address any of EPA's arguments on SLF's claim related to the improper withholding of documents and improper redaction of information under the FOIA Exemptions.[5] Thus, it appears that SLF has abandoned its claims challenging EPA's document production after the benefit of reviewing EPA's sample *Vaughn* index. (*See* Pls.' Resp. and Cross-Mot.)

In its Reply and Response to SLF's Cross-Motion, EPA points out that SLF did not challenge the adequacy of EPA's search for records at the administrative level, nor did SLF raise such a challenge in its Complaint filed in this Court. EPA therefore asserts that SLF failed to administratively exhaust any challenge to the adequacy of EPA's records search—again, an issue raised for the first time by SLF in response to EPA's summary judgment motion. SLF asserts in reply that "all of EPA's deficiencies were raised in SLF's administrative appeal," and that "SLF challenged EPA's search in its administrative appeal and has continue[d] to do so throughout this litigation." (Pl.'s Reply at 2–3.) However, after a careful review of the administrative record and the Complaint, the Court has confirmed that EPA is correct. Any challenge regarding the adequacy of EPA's search is not properly before this Court as SLF has failed to assert such a claim in this suit and the Court may only decide the issues properly before it.

Accordingly, the Court **GRANTS** EPA's Motion for Summary Judgment [Doc. 19] as to SLF's claims relating to the December 2009 FOIA Request and **DENIES** SLF's Motion for Summary Judgment [Doc. 24].

**B. SLF's Request for Fee Waiver for its April 2010 FOIA Request**

 The Court conducts a de novo review of EPA's denial of SLF's fee waiver request based on the record before the agency at the time of the denial. 5 U.S.C. § 552(a)(4)(A)(vii). In other words, if the requestor proffers new information before the court that the agency did not have access to at the time of its decision, the court cannot use this new information during its review. *See District of Columbia Technical Assistance Org., Inc. v. HUD*, 85 F.Supp.2d 46, 48 (D.D.C.2000); *Kansi v. DOJ*, 11 F.Supp.2d 42, 43 (D.D.C.1998); *accord case." Friends of the Coast Fork v. Department of the Interior*, 110 F.3d 53, 55 (9th Cir.1997); *Carney v. DOJ*, 19 F.3d 807, 814 (2nd Cir.), *cert. den.*, 513 U.S. 823, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). Conversely, the court may not consider new reasons by the agency that were not advanced in its denial letter. *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 511–12 (9th Cir.1997) (citing *Industrial Union Dep't v. American Petroleum Inst.*, 448 U.S. 607, 631 n. 31, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980)); *Judicial Watch, Inc. v. Gen. Servs. Admin.*, No. CIV.A. 98–2223(RMU), 2000 WL 35538030, at *4 (D.D.C. Sept. 25, 2000); *Friends of the Coast Fork*, 110 F.3d at 55 ("[O]n judicial review, the agency must stand on whatever reasons for denial it gave in the administrative proceeding. If those reasons are

---

5. Specifically, Plaintiff does not oppose EPA's motion for partial summary judgment on the following issues: (1) whether EPA properly withheld information under FOIA Exemption 5, 5 U.S.C. § 552(b)(5); (2)whether EPA prop-

erly withheld information under FOIA Exemption 6, 5 U.S.C. § 552(b)(6); (3) whether EPA properly designated information as nonresponsive; and (4) whether EPA complied with FOIA's segregability requirement.

inadequate, and if the requestors meet their burden, then a full fee waiver is in order.").

In order to demonstrate that a FOIA request is in the public interest, and therefore eligible for a fee waiver, SLF must show that disclosure of the information "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). EPA does not assert that the requests primarily serve SLF's commercial interests. Thus, the sole question before the Court is whether SLF sufficiently demonstrated that disclosure of the requested information is likely to contribute significantly to public understanding of the government's operations or activities, and is therefore in the public interest.

FOIA requires that federal agencies promulgate regulations specifying the schedule of fees applicable to processing requests under the Act and establishing procedures and guidelines for when such fees should be waived or reduced. See 5 U.S.C. § 552(a)(4)(A)(i). Under EPA's FOIA fee waiver regulation, EPA considers the following four factors to determine whether the disclosure is likely to contribute significantly to public understanding of the operations or activities of the government:

(1) The subject of the request: Whether the subject of the requested records concerns identifiable operations or activities of the Federal government.

(2) The informative value of the information to be disclosed: Whether the disclosure is meaningfully informative and "likely to contribute" to an increased public understanding of government operations or activities. The disclosure of information that already is in the public domain would not be as likely to contribute to such understanding when nothing

new would be added to the public's understanding.

(3) The contribution to an understanding of the subject by the public is likely to result from disclosure: The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester.

(4) The significance of the contribution to public understanding: Whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities, as compared to the level of public understanding existing prior to the disclosure, must be enhanced by the disclosure to a significant extent.

40 C.F.R. § 2.107(*l* )(2)(i)–(iv).

 Although FOIA's fee waiver provision should be "liberally construed in favor of waivers," fee waiver requests must be made with "reasonable specificity." *E.g. Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C.Cir.2003); *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C.Cir. 1988) (per curiam); *Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C.Cir.1987); *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir.1987) (quoting 132 Cong. Rec. 27,190 (1986) (Sen. Leahy)). "[C]onclusory statements that the disclosure of the requested documents will serve the public interest are not sufficient" to meet the requester's burden of showing that the fee waiver requirements are met." *Physician's Committee for Responsible Medicine v. Department of Health and Human Services*, 480 F.Supp.2d 119, 123 (D.D.C. 2007); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F.Supp.2d 54, 60 (D.D.C.2002). To determine whether disclosure would benefit the public, "the court may consider both the nature of the request and . . . the

specificity of the allegations or concerns underlying the request." *Judicial Watch, Inc. v. Gen. Servs. Admin.*, No. CIV.A. 98–223(RMU), 2000 WL 35538030, at \*6 (D.D.C. Sept. 25, 2000). If the requester fails to identify the public interest with reasonable specificity, "and circumstances do not clarify the point of the requests," the agency may reasonably "infer ... that any benefit to the public from disclosure and [fee] waiver would be, at best, indirect and speculative." *National Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C.Cir.1987) ("With only conclusory allegations of the point of the requests before it, the Service naturally found it difficult to discern a basis for the NTEU's assertions of a public interest. Any benefit to the general public that might flow from furnishing the requested information is less than obvious.")

 SLF carries the burden of demonstrating that the disclosure of the information is in the public interest. *Larson*, 843 F.2d at 1483; *Pub. Employees for Envtl. Responsibility v. U.S. Dep't of Commerce*, 968 F.Supp.2d 88, 98 (D.D.C.2013). A requester satisfies its burden by describing with reasonable specificity "the link between the request and the enhancement of public awareness and understanding of governmental activities." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 593 F.Supp.2d 261, 270 (D.D.C.2009) ("*CREW*") ("The key inquiry with respect to a FOIA fee waiver request is whether 'dissemination of the requested information is likely to contribute significantly to citizens' understanding of the workings of their government.' "); *see also McClellan*, 835 F.2d at 1285.

 EPA asserts that SLF failed to satisfy its burden under 5 U.S.C. § 522(a)(4)(A)(iii). EPA contends that SLF failed to satisfy two of the "public interest requirements" of the EPA's regulations implementing the FOIA fee waiver provi-

sion: whether the disclosure is likely to contribute to an increased understanding of government operations or activities, and whether the disclosure is likely to contribute significantly to public understanding of government operations or activities as compared to the level of understanding that existed prior to the disclosure. As courts have observed, "these two criteria [are] hopelessly intertwined," and can properly be considered together. *Nat. Res. Def. Council, Inc. v. U.S.E.P.A.*, 581 F.Supp.2d 491, 498 (S.D.N.Y.2008); *Project on Military Procurement v. Dep't of Navy*, 710 F.Supp. 362, 365 n. 8 (D.D.C. 1989).

EPA asserts that SLF's stated justifications were conclusory and based only on general statements regarding SLF's concerns about "the policy and scientific bases for the Findings" and about how "the constitutionality and costs of any regulatory scheme resulting from the Findings." (EPA Mot. at 11.) According to EPA, SLF failed to: (1) show that the disclosure of the particular records would contribute significantly to the public's understanding of the Endangerment Finding; and (2) explain *how* records related to EPA's grant process would inform the public with regard to the Endangerment Finding. And, because EPA "already issued a thorough and comprehensive explanation of the scientific basis for the Endangerment Finding in the Federal Register ... including an assessment of the science and other technical information on which EPA relied in issuing its Endangerment Finding," SLF failed to demonstrate that documents related to EPA's allocation of federal grant funds toward scientific research would give the public a greater understanding of the Endangerment Finding. (*Id.* at 12.)

EPA misunderstands SLF's position and underestimates the scope of SLF's request. According to SLF's Complaint, on

December 7, 2009, the EPA Administrator made two findings regarding greenhouse gases under Section 202(a) of the Clean Air Act—the Endangerment and Cause or Contribute Findings for Greenhouse Gases—that were subsequently published in the Federal Register and went into effect on January 14, 2010. (Compl. ¶¶ 13-14.) EPA determined that the current and projected concentrations of certain greenhouse gases in the atmosphere threaten the public health and welfare of current and future generations (the Endangerment Finding), and that the combined emissions these greenhouse gases from new motor vehicles contribute to the greenhouse gas pollution which threatens public health and welfare (the Cause or Contribute Finding). 74 Fed. Reg. 66496-01; (see SLF Ex. B to B-4/ Tab 25.) The Administrator of EPA "determined that the body of scientific evidence compellingly supports this finding. The major assessments by the U.S. Global Climate Research Program (USGCRP), the Intergovernmental Panel on Climate Change (IPCC), and the National Research Council (NRC) serve as the primary scientific basis supporting the Administrator's endangerment finding." 74 Fed. Reg. 66496-01.

■ After EPA made these public health threat findings, SLF sought various records related to the Endangerment Findings (the December 2009 FOIA Request) and about the allocation of federal grant funds relating to scientific research on global climate change (the April 2010 FOIA Request). In support of its April 12, 2010 FOIA Request, SLF stated:

> SLF is a non-profit public interest law firm specializing in the practice of constitutional law.[6] SLF also undertakes research on policy issues of interest to the public. Currently, SLF is pursuing information on the awards and uses of federal grants for scientific research ... on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change ... SLF's purpose is the dissemination of information to the public regarding the allocation of federal funds for scientific research.

(SLF Ex. B-1/Tab 22.) On April 20, 2010, EPA requested additional information from SLF and asked SLF to address the requirements for a fee waiver in sufficient detail under its regulatory factors. (SLF Ex. B-3/Tab 24.) On April 27, 2010, SLF submitted its reply and provided further support for its request. (SLF Ex. B-4/Tab 25.)

SLF's reply relied primarily on EPA's prior grant of a fee waiver (after an appeal to the Office of General Counsel) in connection with SLF's December 2009 FOIA Request for documents relating to EPA's December 7, 2009 Endangerment and Cause or Contribute Findings on greenhouse gases. (Id.; Ex. B to Ex. B-4.) SLF characterized the November 2009 and April 2010 requests as similar because "[b]oth requests seek information regarding different aspects of the same issue: EPA determinations and decision-making

---

6. "An entity's status as a non-profit or public interest organization does not relieve it of the burden of meeting the requirements of the statutory test for receiving a fee waiver." *D.C. Tech. Assistance Org., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 85 F.Supp.2d 46, 48 (D.D.C.2000) (citing *McClain v. Department of Justice*, 13 F.3d 220, 221 (7th Cir.1993) (non-profit status alone does not yield free access to facts)); *see also McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir.1987); *VoteHemp, Inc. v. Drug Enf't Admin.*, 237 F.Supp.2d 55, 59 (D.D.C.2002) (citing *D.C. Technical Assistance Org., Inc. v. U.S. Dep't of Housing & Urban Dev.*, 85 F.Supp.2d 46, 48 (D.D.C.2000)) (Plaintiff's status as a non-profit organization does not relieve it of its obligation to satisfy the statutory requirements for a fee waiver)).

processes involving anthropogenic global warming or climate change." (SLF Ex. B-4/Tab 25 at 2.)

As noted, EPA had granted SLF a fee waiver for its prior FOIA request for (i) records relating to the timing of EPA's decision to publish its Endangerment and Cause or Contribute Findings on greenhouse gases and (ii) records relating to any cost-benefit analysis produced by EPA or other government agencies for the EPA related to the Findings. (SLF Exs. F & G to Ex. B-4/Tab 25.) In support of its request for a public interest fee waiver in association with its December 2009 FOIA request, SLF explained the benefit to the public of the disclosure of:

> the potential effects of a carbon reduction regulatory scheme based on the Findings will have vast and numerous implications for the U.S. economy, and all of its citizens. SLF"s goal in requesting this information is to ensure *all* U.S. citizens are fully informed on these implications, and to investigate the constitutionality of any regulatory action promulgated by the EPA based on the Findings.

(SLF Ex. F. to B-4/Tab 25.)

Consequently, as justification for a waiver of fees associated with its April 2010 request for records relating to the use of federal grant funds for scientific research on global climate change, SLF explained

that the reasoning behind its December 2009 request, which was granted, was completely consistent with its current request.[7] (SLF Ex. B-4/Tab 25 at 2.) SLF further explained that its request centered on EPA decision-making processes involving the awarding and denying of scientific grants to various persons, that decisions regarding the use of public funds and resources indisputably relate to the operations or activities of the government, that the disclosure would elaborate on how and under what criteria EPA decides to award or deny scientific grants, and that any insight into the process would be meaningfully informative to the general public. (*Id.* at 3.)

Despite being effectively reversed by the Office of General Counsel three months earlier on an identical fee waiver denial, EPA's National FOIA Officer, Larry F. Gottesman, denied SLF"s request for a fee waiver on May 4, 2010, not because SLF failed to specify how the disclosure of the requested information would contribute to public understanding of government activities, but because SLF had "not expressed a specific intent to publish or disseminate the information to the general public," under the third regulatory factor, and "in fact [SLF] stated that the records will be 'publically available court documents used as evidence in litigation.' "[8] (SLF Ex. B-5/Tab 26.)

---

7. Indeed, SLF parroted this same reasoning in its June 3, 2010, administrative appeal of the April 2010 request. (SLF Ex. B-6/Tab 27.)

8. EPA had previously denied SLF's December 2009 FOIA Request on the same basis—that SLF had "not expressed a specific intent to publish or disseminate the information to the general public." (Ex. E to SLF Ex. B-4/Tab 25.) But following an administrative appeal, the Office of General Counsel granted SLF a fee waiver:

> Based on the additional information you provided in your January 22, 2010, fee waiver appeal, I have concluded that your

appeal, should be, and is, granted. By providing additional information related to the third fee waiver element, you have demonstrated that you meet the requirements to receive a fee waiver for your narrowly tailored request. In your appeal, you indicated that Southeastern Legal Foundation, Inc. "shall undertake all necessary effort to ensure we disseminate, analyze and interpret the information in the Request to the largest audience possible." Letter from Shannon L. Goessling to National Freedom of Information Office dated January 22, 2010. You also committed to disseminating the information on your website and through

SLF submitted an administrative appeal to EPA on June 3, 2010, focusing its arguments on EPA/Gottesman's denial based on an alleged lack of "specific intent to publish or disseminate the information to the general public." (SLF Ex. B-6/Tab 27.) SLF reiterated that the requested records contain information related to how EPA funds research into anthropogenic global warming, climate change, and the Endangerment and Cause or Contribute Findings, "the potential effects of which have vast and numerous implications for the United States economy and all of its citizens." (SLF Ex. B-6/Tab 27.)

Fourteen months later, on August 16, 2011, EPA's Office of General Counsel reversed course on appeal, finding that SLF had in fact satisfied the "intent to publish" factor by "committing to displaying the information on [its] websites and into various mailers ... therefore indicat[ing] that the information will likely contribute to the understanding of a 'reasonably broad audience of persons interested in the subject.' 40 C.F.R. § 107(*l*)(2)(iii)." (SLF Ex. B-15/Tab 34.) Instead, EPA denied SLF's administrative appeal, on an entirely different basis, finding that SLF did not satisfy the first, second and fourth regulatory factors requiring: (i) that the subject of the requested records concerns federal government operations or activities, (ii) that the requested documents must be meaningfully informative about government activities, and (iv) that the disclosure of the requested information is likely to contribute significantly to public understanding of the government. (SLF Ex. B-15/Tab 34.) In this suit, however, EPA is no longer contending that SLF's request failed to satisfy the first factor, specifically that SLF's request for information regarding

the denial or deferral of applications seeking federal funds for research on global climate change—as opposed to the granting of such awards—does not concern government operations or activities.

Considering the nature and surrounding circumstances of SLF's request, it is not difficult to discern a basis for SLF's assertion of a substantial public interest in the information relating to EPA's award and denial of federal grant funds for scientific research underlying its public health Endangerment Findings on global climate change. *Judicial Watch, Inc. v. Gen. Servs. Admin.,* 2000 WL 35538030, at *6; *cf. National Treasury Employees Union v. Griffin,* 811 F.2d at 647. There is no denying that the subject of SLF's request: "grant applications ... related to the EPA's involvement with 'anthropogenic global warming or climate change' research, and how that research is then used by the Federal Government to support agency rulemaking and laws," would be a matter of great public concern. (SLF Ex. B-6/Tab 27 at 2.) The significant public interest in such information is obvious. In the environmental context, it is difficult to imagine a more hot-button topic than the public's interest in and heated reaction for or against the government's efforts to regulate greenhouse gas emissions based on a finding that such emissions "contribute to the total greenhouse gas air pollution, and thus to the climate change problem, which is reasonably anticipated to endanger public health and welfare." 74 Fed. Reg. 66,-496 at 66,499. *See also Util. Air Regulatory Grp. v. E.P.A.,* —— U.S. ——, 134 S.Ct. 2427, 2436, 189 L.Ed.2d 372 (2014) ("In 2007, the Court held that Title II of the [Clean Air] Act "authorize[d] EPA to regulate greenhouse gas emissions from new

---

Southeastern Legal Foundation publications. Id. Your proposed dissemination through "available court documents" does not meet your burden. However, in light of

your other commitments, you have met the third fee waiver element.
(Ex. G to SLF Ex. B-4/Tab 25.)

motor vehicles" if the Agency "form[ed] a 'judgment' that such emissions contribute to climate change." *Massachusetts v. EPA*, 549 U.S. 497, 528, 127 S.Ct. 1438, 167 L.Ed.2d 248 (quoting § 7521(a)(1)). In response to that decision, EPA embarked on a course of regulation resulting in "the single largest expansion in the scope of the [Act] in its history.")[9] As SLF explained in its April 22, 2010 supplement and its June 3, 2010 administrative appeal, EPA's Endangerment Findings "draw information and influence from a vast array of scientific data and research, some of which may have been funded (or partially funded) by the EPA.... Obviously, any regulatory scheme, which would potentially have the reach and breadth as contemplated by the Findings, must be based on sound science, and the grant determination process must be free from political or undue influence." (SLF Exs. B-4 & B-6/Tabs 25 & 27.)

This is not a case where the requested information is aimed at enlightening solely the individual requester, and it is clear from SLF's requests that the disclosure of this information might potentially contribute significantly to the public's understanding of EPA's decision-making process on the use of federal funds for research on regulations addressing an admitted public health issue.[10] *See McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir.1987) (citing 132 Cong.

Rec. H9464 (Oct. 8, 1986) (statement by Reps. Kindness and English) and finding that the legislative history of the 1986 FOIA fee waiver amendments suggests that information has more potential to contribute significantly to public understanding where the information supports public oversight of agency operations, including the effect of agency policy on public health); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1179–81 (10th Cir. 2005) (reversing denial of fee waiver and finding that the "use of public funds to facilitate the collateralization of grazing permits on public land is certainly important to the public's understanding of the BLM. An understanding of how the BLM makes policy decisions, including the influence of any outside groups on this process, is also important to the public's understanding of the BLM," and that "[i]n addition to demonstrating the substantive impact of disclosing the requested records, Forest Guardians asserted that it plans to make the information widely and easily available, vastly increasing the number of people aware of the collateralization program itself and the BLM's facilitation of the program. Release of the records will therefore increase the public's understanding of the operations or activities of the BLM"); *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 581 F.Supp.2d 491 (S.D.N.Y.2008) (finding that FOIA request

**9.** Plaintiff, SLF, was a party to the suit, which including several States, under 42 U.S.C. § 7607(b), challenging EPA's greenhouse-gas-related actions.

**10.** The fact that EPA has published information on the scientific and legal basis for the Endangerment Findings does not obviate the informative value of the requested grant information. Notably, EPA does not contend that the grant information is itself already publicly available. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 593 F.Supp.2d 261, 271–72 (D.D.C.2009) ("contrary to the defendant's contention, the

availability of information regarding the connection between the defendant and commercial publishers in previously released media sources does not obviate the need for further dissemination by the plaintiff or undermine the plaintiff's satisfaction of the public interest prong. ... To the contrary, the plaintiff's "capability to [analyze and] distribute the information it receives" through memoranda, press releases, reports and its website, ... will further enhance the public's access to and understanding of commercial publishers' involvement in the defendant's administration of Reading First, which is all that the fee waiver provision requires");

seeking information about how EPA evaluates the safety of pesticides, and how EPA relies on advice and information from outside entities to conduct this evaluation "touches on an issue of the utmost importance: How government agencies interact with private concerns as the agencies set policy affecting the public interest," and noting that courts have recognized that "[a]n understanding of how [a federal agency] makes policy decisions, including the influence of any outside groups on this process, is also important to the public's understanding of the [government]," sufficient to warrant granting a public interest fee waiver under FOIA).

Without expressing any opinion on the merits of SLF's position that the "veracity" of EPA's "scientific theory" behind its Endangerment Findings is "debatable" and that EPA's regulatory scheme "would negatively impact almost every American business and by extension every American consumer and citizen," (SLF Ex. B-6/Tab 27), the Court agrees that SLF's FOIA request is specifically related to the operations of the federal government and implicates important public interests. "[T]he public has an interest in information which could help them decide whether an agency's expenditure of their tax monies was based on sound financial or functional [or scientific] considerations or on other, arguably less appropriate considerations." *See, e.g., Buchanan v. Associated Press*, 398 F.Supp. 1196, 1202–1203 (D.D.C.1975) (expenditures and cash transactions of a federal committee were matters of legitimate public concern). SLF has satisfied its burden by describing with reasonable specificity the link between the request and the enhancement of public debate, awareness, and understanding of EPA's regulation of greenhouse gas emissions under the Clean Air Act. *E.g., Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 593 F.Supp.2d at 270.

Accordingly, the Court finds that SLF is entitled to a waiver of the costs of production of documents responsive to its April 2010 FOIA Request. Therefore, the Court **DENIES** EPA's Motion for Summary Judgment [Doc. 14] and **GRANTS** SLF's Motion for Summary Judgment [Doc. 15] on the fee waiver issue.

### C. Production of Documents Responsive to April 2010 Request

After EPA denied SLF's request for a fee waiver and provided SLF with the $1,125 cost estimate for the production of the documents responsive to SLF's request for scientific grant records, SLF requested that EPA produce the documents in electronic format, on the assumption that production costs could be avoided by transmitting the documents electronically. (SLF Ex. B-28/Tab 45.) Without explanation, EPA denied and administratively closed SLF's FOIA request. (*Id.*)

Now in this suit, EPA contends that the scientific grant records are not readily producible in electronic format, relying on the Declaration of Lisa Doucet, the EPA employee responsible for responding to SLF's April 2010 FOIA Request. According to Ms. Doucet, all of the 117 grant files were only available in paper format and were not maintained or readily available electronically. (Doucet Decl. ¶¶ 25-26.) Doucet's office determined that scanning and digitizing all of the files, which totaled over 11,000 pages, would be more expensive and take additional time than providing paper copies.[11] (*Id.* ¶ 27.) There is, however, no indication in the administra-

---

11. 40 C.F.R. § 2.107(c)(2)(ii) provides that "[f]or electronic forms of duplication, other than a computer-generated printout, offices will charge the direct costs of that duplication. Such direct costs will include the costs of the requested electronic medium on which the copy is to be made and the actual operator time and computer resource usage required to produce the copy, to the extent they can be determined."

tive record that this information was communicated to SLF.

 FOIA provides that an agency "shall provide" the requested record "in any form or format requested by the person if the record is readily reproducible by the agency in that form or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section." 5 U.S.C. § 552(a)(3)(B); *see also* 40 C.F.R. § 2.107(b)(3) ("Copies can take the form of paper, microform, audiovisual materials, or electronic records (for example, magnetic tape, disk, or compact disk), among others. The Agency will honor a requester's specified preference of form or format of disclosure if the record is readily reproducible with reasonable efforts in the requested form or format.") FOIA further provides that on judicial review, "a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to ... reproducibility under paragraph (3)(B)." 5 U.S.C. § 552(a)(4)(B). Although "substantial deference is due an agency's 'reproducibility' determination, ... such deference does not amount to a blanket exemption from judicial review of the agency's justification for declining to comply with a specific format request or failing to maintain records in readily reproducible formats, as required under ... 5 U.S.C. § 552(a)(3)(B)." *Scudder v. C.I.A.*, 25 F.Supp.3d 19, 39 (D.D.C. 2014).

 It is not clear that SLF has persisted in its request for the documents to be produced electronically. Instead, SLF simply asks the Court to "order EPA to produce all responsive records at no cost to SLF." (Pl.'s Cross-Mot. at 19.) SLF only requested electronic production in order to avoid incurring costs for a paper production. Although the records may have been "readily reproducible" in electronic format under the relevant case authority, the Court accepts EPA's unchallenged representation that the cost of producing the documents electronically would have far exceeded the cost of producing the documents in paper. *See Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C.Cir.2006) ("Under any reading of the statute, however, "readily reproducible" simply refers to an agency's technical capability to create the records in a particular format."); *Scudder v. C.I.A.*, 25 F.Supp.3d at 37 (rejecting as incorrect the argument that an agency need only produce records in a particular format requested if the agency already keeps or maintains its records in that format); *Landmark Legal Found. v. EPA*, 272 F.Supp.2d 59, 63 (D.D.C.2003) (construing "readily reproducible" as the ability to duplicate).

Accordingly, under these circumstances, the Court finds that EPA is not required to produce the grant records electronically, but may produce them in paper format as originally requested.[12] Therefore, the Court **DENIES** EPA's Motion for Summary Judgment [Doc. 14] and **GRANTS** SLF's Motion for Summary Judgment [Doc. 15] as to the production of documents responsive to SLF's April 2010 FOIA Request.

### D. SLF's November 2013 Request for Records Relating to EPA's Annual FOIA Reports for 2009 to 2012

FOIA requires each federal agency to prepare yearly reports that contain de-

---

12. EPA argues that it properly closed SLF's FOIA request for non-payment, and that SLF failed to exhaust its administrative remedies by paying the required fees prior to seeking an order from this Court compelling the production of the documents. EPA's argument that SLF's nonpayment bars its request on an exhaustion of remedies defense is moot in light of the Court's determination that SLF is entitled to a fee waiver.

tailed statistics on the numbers of FOIA requests received and processed by each agency, the time taken to respond, and the outcome of each request, as well as other statistics regarding the administration of FOIA at federal departments and agencies. 5 U.S.C. § 552(e). FOIA further provides that "each agency shall make the raw statistical data used in its reports available electronically to the public upon request." 5 U.S.C. § 552(e)(3).

After battling with EPA for 4 years over its FOIA Requests, on November 12, 2013, SLF sought information related to EPA's Annual FOIA Reports from 2009 to 2012, including documents, data, memoranda, or reports that reflect the underlying data used in the preparation and creation of the Annual FOIA Reports. (SLF Ex. C-1/Tab 46.) EPA responded on March 6, 2014 that it did not have access to the requested records because its contract with FOIA Xpress—the software used to prepare the Annual Reports for the requested time period—had expired, explaining:

> EPA used FOIA Xpress, as the tracking tool and to create EPA's FOIA Annual Reports which are the subject of your request. FOIA Xpress is a propriety [sic] software tool that is no longer being used by EPA or being supported by the vendor. In the past when we received a similar request, the vendor had to run a special report, through the "back-end," which we do not have access to. Accordingly, we are unable to produce any data from FOIA Xpress.

(SLF Ex. C-9/Tab 54.) Instead, EPA referred SLF to the website where EPA's Annual Reports are already publicly available online. (*Id.*) After this suit was filed, however, EPA performed a search and located documents responsive to SLF's request for written and electronic correspondence, memoranda, data or reports that discuss various sections of EPA's Annual FOIA Reports. (Gottesman Decl. ¶¶ 15-19.)

SLF argues that EPA has a statutory obligation to make the requested raw statistical data used to prepare the Annual FOIA Reports available electronically. "The Freedom of Information Act, 5 U.S.C. § 552, empowers federal courts to order an agency to produce 'agency records improperly withheld' from an individual requesting access. § 552(a)(4)(B)." *Forsham v. Harris*, 445 U.S. 169, 170, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980). EPA asserts that to the extent SLF requests data beyond what is available online, such data are not "agency records" subject to FOIA disclosure because "EPA has no control over the raw data underlying the FOIA Annual reports ... other than the raw data publically available on the EPA website." (Mot. at 20.) According to EPA, in order to qualify as an "agency record," "the agency must either create or obtain the requested materials and the agency must be in control of [them] at the time the FOIA request is made." (*Id.* (quoting *Burka v. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C.Cir.1996)); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (articulating a two-part test for determining what records constitute "agency records" for FOIA purposes: (1) records either created or obtained by the agency to which the FOIA request was made and (2) records under that agency's control at the time the FOIA request is made).

According to Larry Gottesman, EPA's National FOIA Officer, it is his "understanding" that the machine-readable version (NIEM-XML) of the Annual Report available on EPA's website "would be the record responsive to SLF's request for the data underlying the FOIA Annual Reports." (Gottesman Decl. ¶ 9.) Gottesman,

however, offers no explanation to support his "understanding" that the Annual Report itself contains the underlying raw statistical data used to prepare the report as opposed to the Annual Report containing a summary of the underlying data.

Gottesman further explains EPA's position that it cannot produce any information other than the actual Annual Reports:

> In the fiscal years 2009 through 2012 that were the subject of SLF's FOIA request, the EPA used FOIAXpress, a proprietary, commercial off-the-shelf software product, for its internal FOIA tracking purposes [and] to generate the FOIA Annual Reports for fiscal years 2009-2012 ... [P]rior to the October 2012 expiration of the EPA's contract with FOIAXpress, the EPA had the ability, through its FOIAXpress contractor, to produce custom reports, and data using the so-called "back-end" capability of FOIAXpress. ... The Agency's contract with FOIAXpress expired as of October 31, 2012. After October 31, 2012, the EPA had no ability to generate new custom reports or data from the "back-end" capability of FOIAXpress. EPA did retain very limited access to FOIAXpress during an Office of the Inspector General ("OIG") review of the fee waiver process, but after receiving OIG permission, EPA fully decommissioned FOIAXpress in May 2014.

> As part of the decommissioning process, the information previously stored within the FOIAXpress system, such as the incoming FOIA requests and related correspondence, was transferred to an Agency external hard drive for archive purposes, where it is currently retained, in accordance with EPA policies and records schedules. I have been informed that there is no ability to generate a report, log, or other "statistical data"

from this stored material without the proprietary FOIAXpress software.

(Gottesman Decl. ¶¶10-11.)

The language of FOIA is clear and expressly provides that both the Annual FOIA Reports and the information used by an agency to prepare its Annual FOIA Report are subject to FOIA's public disclosure requirement. 5 U.S.C. § 552(e)(3) (providing that "[e]ach agency shall make each such report available to the public ... [and] each agency shall make the raw statistical data used in its reports available electronically to the public upon request"). FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). FOIA defines the term "record" and "any other term used in this section in reference to information" as including:

> (A) any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and (B) any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management.

5 U.S.C. § 552(f).

Turning to the Supreme Court's two-part "agency records" analysis, EPA does not contest that the raw statistical data — the underlying information and data used to create and prepare its Annual FOIA Reports—were created or obtained by EPA. The Annual Reports and the underlying data used to create them undeniably constitute "records" under FOIA.

Instead, EPA only asserts that by virtue of the expiration of its contract with its FOIAXpress vendor, EPA no longer has control over the information. The Supreme Court has held that "FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 151–52, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (describing the Act as reaching "records and material in the possession of federal agencies. ...")). "[P]ossession or control is a prerequisite to FOIA disclosure duties ... The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Id.* Control means "that the materials have come into the agency's possession in the legitimate conduct of its official duties." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 145, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989).

According to the Gottesman declaration, EPA was in possession and control of underlying data at the time SLF's FOIA request was made in November 2013. *Judicial Watch, Inc. v. U.S. Dep't. of Commerce*, 34 F.Supp.2d 28, 44 (D.D.C. 1998) ("The clear implication is that the status of a particular document at the time the FOIA request is submitted determines whether the unreasonable failure to produce that document is an unlawful withholding.") Although EPA's contract with FOIAXpress expired on October 31, 2012, EPA retained limited access to FOIAXpress until the program was fully decommissioned by EPA in May 2014. (Gottesman Decl. ¶ 10.) And, prior to decommissioning the program, "the information previously stored within the FOIAXpress system, such as the incoming FOIA requests and related correspondence, was

transferred to an Agency external hard drive for archive purposes, where it is currently retained, in accordance with EPA policies and records schedules." (Gottesman Decl. ¶ 11.) EPA has offered no reason why it cannot produce a copy of the information saved on the external hard drive to SLF in response to its FOIA Request. *Cf. DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C.Cir.2015) ("The general rule is that an agency may not avoid a FOIA request by intentionally ridding itself of a requested document."); *Chambers v. Department of Interior*, 568 F.3d 998, 1004 (D.C.Cir.2009) ("[A]n agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA[.]"). Furthermore, despite Gottesman's unsubstantiated representation that he "ha[s] been informed that there is no ability to generate a report, log, or other 'statistical data' from this stored material without the proprietary FOIAXpress software," Gottesman acknowledges that EPA contracted with FOIAXpress for its internal FOIA tracking purposes. Section 552(f)(2)(B) of FOIA requires production of documents "maintained for an agency by an entity under Government contract, for the purposes of records management." 5 U.S.C. § 552(f)(2)(B). Although EPA contends that it is impossible to produce the requested information without direct access to FOIAXpress, EPA has not offered any actual evidence that it is impossible to access FOIAXpress. Although EPA may not currently have access to the program, EPA has failed to demonstrate that it could not obtain access to the program if ordered to do so by this Court.

Accordingly, the Court finds that EPA wrongfully withheld the data underlying its Annual FOIA Reports for 2009 to 2012 and SLF is entitled to production of the information saved on the external hard

drive maintained by EPA. The Court therefore **ORDERS** EPA to undertake all reasonable efforts to coordinate with its former vendor to extract the raw statistical data from FOIAXpress and produce it as required under Section 552(e)(3) of FOIA.[13] At a minimum, EPA should provide SLF with a copy of the external hard drive. Therefore, the Court **DENIES** EPA's Motion for Summary Judgment [Doc. 14] and **GRANTS** SLF's Motion for Summary Judgment [Doc. 15] as to the November 2013 FOIA Request.[14]

## IV. CONCLUSION

As set forth above, the Court **DENIES** EPA's Motion for Summary Judgment [Doc. 14], **GRANTS** SLF's Motion for Summary Judgment [Doc. 15], **GRANTS** EPA's Motion for Summary Judgment [Doc. 19], and **DENIES** SLF's Motion for Summary Judgment [Doc. 24].

Specifically, the Court **GRANTS** summary judgment in favor of EPA [Doc. 19] on SLF's claims related to its December 2009 FOIA Request asserting that EPA (i) improperly withheld information under FOIA Exemptions 5 and 6, (ii) improperly designated information as non-responsive, and (iii) EPA failed to comply with FOIA's segregability requirement. The Court **DENIES** SLF's Motion for Summary Judgment [Doc. 24] challenging the adequacy of EPA's search for documents responsive to SLF's December 2009 FOIA Request because the claim was not asserted in the Complaint and is therefore not properly before this Court.

SLF is entitled to a waiver of the costs of production of documents responsive to its April 2010 FOIA Request, but SLF's request for a fee waiver on its November 2013 FOIA Request is moot as a result of EPA's subsequent agreement to produce information responsive to the request at no charge. EPA is not required to produce documents responsive to SLF's April 2010 request electronically, but may produce them in paper format as originally requested. Therefore, EPA's Motion for Summary Judgment [Doc. 14] issue is **DENIED** and SLF's Motion for Summary Judgment [Doc. 15] is **GRANTED IN PART** and **DENIED IN PART**.

SLF is entitled to summary judgment on its November 2013 FOIA Request. EPA wrongfully withheld the data underlying its Annual FOIA Reports for 2009 to 2012. SLF is entitled to production of the information saved on the external hard drive maintained by EPA, and EPA should undertake all reasonable efforts to coordinate with its former vendor to extract the raw statistical data from FOIAXpress and produce it as required under Section 552(e)(3) of FOIA. Therefore, EPA's Motion for Summary Judgment [Doc. 14] is **DENIED** and SLF's Motion for Summary Judgment [Doc. 15] is **GRANTED**.

As no further relief has been requested by Plaintiff in the Complaint, the Clerk is **DIRECTED** to **CLOSE THE CASE**.

---

**13.** Court notes it does not appear that the data underlying the FOIA reports, which should be purely statistical data, would be subject to any confidentiality or privilege protections.

**14.** As EPA subsequently agreed to produce information responsive to the November 2013 FOIA Request at no charge, SLF's request for a fee waiver is moot. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 593 F.Supp.2d 261, 269 (D.D.C.2009)

(finding issue of fee waiver moot because the plaintiff has " 'obtained everything that [it] could recover ... by a judgment of this court in [its] favor.' " *Hall v. CIA*, 437 F.3d 94, 99 (D.C.Cir.2006); *Schoenman v. FBI*, 573 F.Supp.2d 119, 136 (D.D.C.2008)(" '[A]n agency's decision to release documents to a FOIA requester without seeking payment from him moots the requester's arguments that a denial of a fee waiver was substantively incorrect.' ")

**IT IS SO ORDERED** this 30th day of March, 2016.